741 A.2d 138 (1999)
326 N.J. Super. 296
STATE of New Jersey, Plaintiff-Respondent,
v.
Charles RUMBLIN, a/k/a Dawud M. McGhee, a/k/a Jamal Jones, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 16, 1999.
Decided December 8, 1999.
*139 Ivelisse Torres, Public Defender, for defendant-appellant (Claire Drugach, Assistant Deputy Public Defender, of counsel and on the brief).
William H. Schmidt, Bergen County Prosecutor, for plaintiff-respondent (John J. Scaliti, Assistant Prosecutor, of counsel and on the brief).
Before Judges MUIR, Jr., and LESEMANN.
The opinion of the court was delivered by MUIR, Jr., P.J.A.D.
This appeal centers on the applicability and constitutionality of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant, pursuant to a negotiated plea which included his written acknowledgment that NERA's 85% parole ineligibility requirement applied to any sentence imposed, pled guilty as an accomplice to first-degree robbery and other crimes. The trial court imposed a twenty-year prison sentence with an 85% parole ineligibility term on the robbery charge. Defendant appeals, contending NERA does not apply to accomplice liability for first-degree offenses. He alternately argues imposition *140 of the 85% parole ineligibility provision violates the cruel and unusual punishment proscriptions of the state and federal constitutions. Finally, he argues the sentence imposed is excessive. We affirm.

I
A Bergen County Grand Jury issued a multiple count indictment after an armed robbery at the Radisson Inn in Paramus. The indictment charged defendant and his two codefendants, Everton Watts and Raheam Goosby, with first-degree armed robbery (N.J.S.A. 2C:15-1, count one); second-degree aggravated assault on a police officer (N.J.S.A. 2C:12-1b(1), count two); third-degree aggravated assault on police officers (N.J.S.A. 2C:12-1b(2), counts three and six); fourth-degree aggravated assault on police officers (N.J.S.A. 2C:12-1b(4), counts four, five, six, eight, nine, ten, and eleven); fourth-degree resisting arrest (N.J.S.A. 2C:29-2a, counts twelve, thirteen, and fourteen); second-degree possession of two handguns for unlawful use purposes (N.J.S.A. 2C:39-4a, count fifteen); third-degree unlawful possession of two handguns (N.J.S.A. 2C:39-5b, count sixteen); fourth-degree unlawful possession of hollow-nose bullets (N.J.S.A. 2C:39-3f, count 17); third-degree possession of cocaine (N.J.S.A. 2C:35-10a(1), count eighteen); fourth-degree riding in a stolen car (N.J.S.A. 2C:20-10d, count twenty); and fourth-degree theft by receiving stolen property (N.J.S.A. 2C:20-7, count twenty-one). The indictment charged defendant individually with third-degree theft by receiving stolen property, a motor vehicle (N.J.S.A. 2C:20-7, count nineteen).
The plea negotiated called for defendant to plead guilty to counts one, seven, twelve, fourteen, eighteen, and nineteen, with the remaining charges to be dismissed. The State agreed to recommend a sentence not to exceed twenty years.
Defendant signed two plea forms which explicated the terms of the plea. The first was the conventional plea form, which is not an issue on this appeal. The second was entitled, "Supplemental Plea Form for No Early Release Act Cases." The Supplemental Plea Form provided:
The following questions need to be answered only if you are pleading guilty to a first or second degree violent crime and the crime occurred on or after June 9, 1997.
A violent crime means any crime in which you caused death, serious bodily injury, or you used or threatened the immediate use of a deadly weapon. A violent crime also includes any aggravated sexual assault, or sexual assault in which you used, or threatened the immediate use of, physical force. Deadly weapon means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner in which it is used or intended to be used, is known to be capable of producing death or serious bodily injury. Serious bodily injury means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
1. Are you pleading guilty to any first or second degree violent [YES] [NO]
crime?
2. a. Do you understand that because of your plea of guilty to
Robbery While Armed1
---------------------------------------------------------------
(LIST FIRST OR SECOND DEGREE VIOLENT CRIMES)
you will be required to serve 85% of the sentences imposed for [YES] [NO]
that offense(s) before you will be eligible for parole on that
offense(s)?
*141
b. Do you understand that by pleading guilty to these [YES] [NO]
charges, the minimum mandatory period of parole ineligibility
is 8 years and 7 months (fill in the number of years/months)
and the maximum period of parole ineligibility can be 17 years
and 0 months (fill in number of years/months) and this period
cannot be reduced by good time, work or minimum custody
credits?
3. Do you understand that because you have plead [sic] guilty to [YES] [NO]
these charges the court must impose a 5 year term of parole
supervision and that term will begin as you complete the
sentence of incarceration?
First Degree Term of Parole Supervision5 years
Second Degree Term of Parole Supervision3 years
Defendant circled "yes" next to each of the questions, signed and dated the form. The plea forms, read together, evidence defendant's awareness of the penal consequences of his plea and that the NERA 85% parole ineligibility term was a condition of the plea agreement.
Defendant provided a factual basis for each of the six counts covered by the plea agreement. As to the armed robbery, he acknowledged that while driving a stolen 1985 Chevy Camaro, he discussed with Watts and Goosby a plan to commit an armed robbery of the Radisson Inn. He indicated that he knew his codefendants would be armed with firearms when they committed the robbery. He was to be the operator of the getaway car when the robbery was completed. Consequently, he acknowledged and does not dispute on appeal his accomplice culpability in that he shared with his codefendants the same intent and purpose to promote or facilitate the robbery with the use of firearms. See State v. Norman, 151 N.J. 5, 32, 697 A.2d 511 (1997). He also further admitted that in attempting to effectuate the getaway he drove the Camaro directly at a police officer, causing the officer to dive out of the way in the process of which the officer was injured.
The trial court accepted the plea and imposed a twenty-year term with the parole ineligibility term that represented 85% of the twenty-year term. The court additionally imposed a five-year parole supervision term, as well as appropriate monetary sanctions. Defendant appeals the ensuing judgment of conviction.

II
The pertinent sections of NERA provide:
a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.
....
d. For the purposes of this section, "violent crime" means any crime in which the actor ... threatens the immediate use of a deadly weapon....
For the purposes of this section, "deadly weapon" means any firearm ... which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
Defendant does not dispute NERA's applicability to a principal involved in an armed robbery. Instead, he focuses on the use of the word "actor," arguing the term encompasses only principals, not accomplices. We disagree.
The answer to defendant's contention lies in State v. White, 98 N.J. 122, 130, 484 A.2d 691 (1984), where the Supreme Court held the Graves Act applied to a defendant convicted as an accomplice to an armed *142 robbery. Essentially, White and its progeny make it clear accomplices are to be punished as principals. See State v. Mancine, 124 N.J. 232, 259-60, 590 A.2d 1107 (1991); State v. Weeks, 107 N.J. 396, 400, 526 A.2d 1077 (1987). A predicate for that conclusion is the Legislature would not have intended that the mastermind of an armed robbery could avoid the consequences of mandatory sentencing by having a confederate carry out the crime. State v. Mancine, supra, 124 N.J. at 260, 590 A.2d 1107; State v. Weeks, supra, 107 N.J. at 400, 526 A.2d 1077; State v. White, supra, 98 N.J. at 130, 484 A.2d 691.
Beyond that, defendant cannot escape the applicability of NERA when his plea agreement expressly acknowledged that applicability. A defendant may not escape the consequences of a guilty plea when he had a full understanding, a full awareness, of the consequences of his plea. See, e.g., State v. Kiett, 121 N.J. 483, 488, 582 A.2d 630 (1990); State v. Howard, 110 N.J. 113, 122, 539 A.2d 1203 (1988); State v. Kovack, 91 N.J. 476, 484, 453 A.2d 521 (1982). Given the fact defendant knew NERA applied to his sentence, as evidenced by the comprehensive Supplemental Plea Form, we discern no valid grounds to allow him to now claim otherwise.

III
Defendant also claims it is a violation of the state and federal constitutional proscriptions against cruel and unusual punishment to apply NERA's 85% parole ineligibility provision against an accomplice to a first or second degree violent crime. Defendant did not raise this issue before the trial court, and we are therefore not obliged to consider it. See, e.g., State v. McGraw, 129 N.J. 68, 81, 608 A.2d 1335 (1992).
Nevertheless, on its merits we find the contention unavailing. Legislative mandatory sentencing provisions have consistently withstood cruel and unusual punishment claims. See State v. Maldonado, 137 N.J. 536, 556-60, 645 A.2d 1165 (1994); State v. Des Marets, 92 N.J. 62, 82, 455 A.2d 1074 (1983); State v. Kadonsky, 288 N.J.Super. 41, 45, 671 A.2d 1064 (App. Div.), certif. denied, 144 N.J. 589, 677 A.2d 761 (1996); State v. McClain, 263 N.J.Super. 488, 497, 623 A.2d 280 (App.Div.), certif. denied, 134 N.J. 477, 634 A.2d 524 (1993); State v. Johnson, 206 N.J.Super. 341, 343, 502 A.2d 1149 (App.Div. 1985), certif. denied, 104 N.J. 382, 517 A.2d 390 (1986). Similar challenges in other states, where mandatory sentencing requirements were enacted, have been rejected. See State v. Johnson, 325 N.J.Super. 78, 89, 737 A.2d 1140 (App.Div.1999). We find no basis to reach a contrary result given the premise that accomplices are to be treated as principals. See State v. Mancine, supra, 124 N.J. at 260, 590 A.2d 1107; State v. Weeks, supra, 107 N.J. at 400, 526 A.2d 1077; State v. White, supra, 98 N.J. at 130, 484 A.2d 691.

IV
Finally, we reject defendant's excessive sentence contention, which is raised on the grounds the sentence violated the sentencing guidelines of the New Jersey Criminal Code. See N.J.S.A. 2C:44-1. We are satisfied from our review of the record that the trial court's findings regarding aggravating and mitigating factors were based on competent and credible evidence in the record, that the court applied the correct sentencing guidelines, and that the sentence imposed does not shock the judicial conscience. See State v. Roth, 95 N.J. 334, 363-65, 471 A.2d 370 (1984), accord State v. Roach, 146 N.J. 208, 230, 680 A.2d 634, cert. denied, 519 U.S. 1021, 117 S.Ct. 540, 136 L.Ed.2d 424 (1996); State v. Megargel, 143 N.J. 484, 493-94, 673 A.2d 259 (1996).
The judgment of conviction under appeal is affirmed.