762 A.2d 276 (2000)
335 N.J. Super. 267
STATE of New Jersey, Plaintiff-Respondent,
v.
Samuel A. MANZIE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 2000.
Decided November 29, 2000.
John Michael Vazquez argued the cause for appellant, (Michael Critchley & Associates, West Orange, attorneys; Michael Critchley and Mr. Vazquez, on the brief).
Lisa Sarnoff Gochman, Deputy Attorney General, argued the cause for respondent, (John J. Farmer, Jr., Attorney General, attorney; Ms. Gochman, of counsel and on the brief).
Before Judges D'ANNUNZIO, KEEFE, and EICHEN.
The opinion of the court was delivered by *277 D'ANNUNZIO, P.J.A.D.
Samuel Manzie, then 17 years of age, pleaded guilty to the murder of Edward Werner. Manzie committed the murder on September 27, 1997. At that time, Werner was 11 and Manzie was 15. The Family Part waived jurisdiction, and Manzie was indicted. Manzie entered his guilty plea against the advice of his counsel and his family. The State agreed to dismiss the other nine counts of the indictment, which included charges of aggravated sexual assault, aggravated criminal sexual contact, and first degree robbery. The State agreed not to seek a mandatory sentence of life imprisonment without parole under N.J.S.A. 2C:11-3b(3), which applies to the murder of a child under the age of 14 in the course of a sexual assault or criminal sexual contact. The State indicated, however, that it would seek a term of imprisonment up to life, as well as application of the No Early Release Act (NERA). NERA requires service of 85% of a sentence without parole in the event of conviction of a first or second degree "violent crime." N.J.S.A. 2C:43-7.2a.
The trial court sentenced defendant to 70 years' imprisonment and applied NERA, ordering that Manzie not be eligible for parole until he has served 59 years and 6 months of his sentence. The sentencing court also imposed the 30-year mandatory period of parole ineligibility required in the murder statute, N.J.S.A. 2C:11-3b, noting, however, that "the paramount provision of the `No-Early-Release-Law' shall govern." The court dismissed the other counts in the indictment.
Manzie appeals and makes the following contentions:
POINT I
THE LOWER COURT ERRED, FACTUALLY AND LEGALLY, IN DETERMINING AND WEIGHING THE AGGRAVATING AND MITIGATING FACTORS UNDER N.J.S.A. 2C:44-1.
POINT II
THE LOWER COURT ERRED IN APPLYING THE NO EARLY RELEASE ACT, N.J.S.A. 2C:43-7.2, IN THE PRESENT MATTER SINCE THAT ACT DOES NOT APPLY TO MURDER UNDER N.J.S.A. 2C:11-3.
The first contention is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We perceive no basis in the record to interfere with the trial court's sentence of 70 years' imprisonment.
The difficult issue is whether NERA applies to murder. N.J.S.A. 2C:43-7.2a and d provide:
a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.
....
d. For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11-1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.
For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
The issue is one of legislative intent. See State v. Ferencsik, 326 N.J.Super. 228, 230-31, 741 A.2d 101 (App.Div. 1999) (reviewing principles of statutory construction). The State argues that the statute is clear and unambiguous; murder is a violent crime as defined in subsection *278 d because Manzie caused Werner's death. Indeed, we have applied NERA to other forms of homicide, such as reckless manslaughter, State v. Newman, 325 N.J.Super. 556, 561, 740 A.2d 153 (App.Div.1999) (holding that "the plain language admits only one interpretationreckless manslaughter falls within [NERA] ..."), certif. denied, 163 N.J. 396, 749 A.2d 370 (2000), and to vehicular homicide, State v. Ferencsik, supra, 326 N.J.Super. at 231, 741 A.2d 101 (stating that "[w]e perceive no ambiguity from language or context in the Act's definition of a `violent crime,'" as applied to vehicular homicide). Murder, however, is different.
NERA applies to crimes "of the first or second degree." N.J.S.A. 2C:43-7.2a. But the statute does not mention murder. Although murder is characterized as a crime of the first degree, N.J.S.A. 2C:11-3b(1), it is rarely, if ever, analyzed as a first degree crime because the murder statute establishes a discrete sentencing scheme which deviates substantially from the sentencing options applicable to first degree crimes.
The court may sentence a person convicted of a first degree crime to imprisonment "for a specific term of years which shall be fixed by the court and shall be between 10 years and 20 years." N.J.S.A. 2C:43-6a(1). The presumptive sentence for a first degree crime is 15 years. N.J.S.A. 2C:44-1f(1)(b). The statute establishing presumptive terms explicitly states that it does not apply to murder. N.J.S.A. 2C:44-1f(1). In sentencing for a first degree crime, a court may impose a period of parole ineligibility of up to one-half of the sentence. Because the maximum ordinary term for a first degree crime is 20 years, the maximum period of parole ineligibility is 10 years. N.J.S.A. 2C:43-6b.
More severe ordinary terms may be imposed for certain first degree crimes such as aggravated manslaughter, N.J.S.A. 2C:11-4a, and kidnapping, N.J.S.A. 2C:131a and b. A person may be sentenced to a prison term between 10 and 30 years for aggravated manslaughter, N.J.S.A. 2C:11-4c, and to a prison term between 15 and 30 years for kidnapping. N.J.S.A. 2C:13-1c(1).
Murder, however, is unique. See State v. Maguire, 84 N.J. 508, 526, 423 A.2d 294 (1980) (holding that crime of murder is subject to discretionary term of life imprisonment, though it is described as a crime of the first degree); State v. Serrone, 95 N.J. 23, 27, 468 A.2d 1050 (1983) (holding that life imprisonment for murder is an ordinary term, not an extended term; therefore, consecutive life sentences may be imposed for double murder despite prohibition against imposition of two extended terms). It may result in a death sentence. N.J.S.A. 2C:11-3c. In non-capital murder, the minimum sentence is 30 years without parole. N.J.S.A. 2C:11-3b(1). The court may sentence a convicted murderer to a term in excess of 30 years and up to life imprisonment, but 30 years of that sentence must be served before parole eligibility. Ibid. A sentence of life imprisonment without parole must be imposed in certain circumstances if the victim was a law enforcement officer, N.J.S.A. 2C:11-3b(2), or, as previously indicated, if the murder was committed during an aggravated sexual assault and the victim was under the age of 14. N.J.S.A. 2C:11-3b(3).
Parole ineligibility is an element which underscores the unique status of murder and further distinguishes it from first degree crimes. As previously noted, N.J.S.A. 2C:43-6b authorizes the imposition of a period of parole ineligibility of up to one-half of a prison term. This general provision applies to first degree crimes, but the State conceded that it does not apply to murder because the murder statute establishes a maximum 30-year period of parole ineligibility. Thus, even if a court imposes a 70-year prison term for murder, it may not rely on N.J.S.A. 2C:43-6b to establish a 35 year parole ineligibility period.
*279 The special status of murder with its own complete and integrated sentencing scheme, the fact that murder already requires the application of the severest sanctions, and NERA's express application only to "a crime of the first or second degree" create an ambiguity, based on language and context, regarding NERA's application to murder. Cf. Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998) (stating that "if the language [of a statute] has more than one possible interpretation, the court will look beyond the language to determine the Legislature's intent"); Brock v. Public Service Elec. & Gas Co., 149 N.J. 378, 391, 693 A.2d 894 (1997) (noting that "ambiguity may be inferred from related legislation or other circumstance" though the statutory language is otherwise clear); Henry v. Shopper's World, 200 N.J.Super. 14, 18, 490 A.2d 320 (App.Div.1985) (observing that "[o]ften, the surest path to misconstruction is a literal reading of a statute").
In the face of ambiguity, we must look beyond the statute's language to determine the legislative intent. Cornblatt, supra, 153 N.J. at 231, 708 A.2d 401. Legislative history, including legislative statements and the testimony of sponsors, are valuable interpretive aids. See State v. McQuaid, 147 N.J. 464, 480-82, 688 A.2d 584 (1997); State v. Supervisory Employees Ass'n, 78 N.J. 54, 68-70, 393 A.2d 233 (1978); Butler v. Amato, 224 N.J.Super. 124, 128, 539 A.2d 1241 (App.Div.1988). The Legislators who sponsored NERA stated expressly and impliedly that it does not apply to murder. Senator John Bennett introduced NERA as S. 855 on February 26, 1996. On April 24, 1996, S. 855 was the subject of a public hearing before the Senate Law and Public Safety Committee. No Early Release Act: Hearing on S. 855 Before The Senate Law & Public Safety Comm., 207th Legis., 1st Sess. (N.J. 1996) (hereafter "Hearing"). Senator Kosco, the committee chair, was a sponsor of the bill.
Assemblywoman Diane Allen, who sponsored the bill in the Assembly, was the first witness. Assemblywoman Allen explained that the bill's purpose is "to insure that those violent offenders who commit the crimes like manslaughter, attempted murder, kidnapping, aggravated assault, arson for hire, aggravated sexual assault, and vehicular manslaughter are held accountable." Hearing, p. 3-4 (emphasis added). Murder was not on her list.
In his statement at the hearing, Senator Bennett expanded on his bill's rationale:
The current system of justice does not hold all violent offenders who commit first or second degree crimes accountable. Getting out of jail early is not accountability. Getting out of jail for manslaughter with only serving one-third or, in some cases, one-fifth of their sentence is not accountability. Making crime victims and their families suffer the humiliation of early release is not accountability. The No Early Release Act is accountability. Offenders will have to serve a minimum of 85 percent of their sentence before they are eligible for parole, period. As my colleague Diane Allen said, "No excuses, no exceptions." We all believe that these criminals need to serve the time for their crimes. Frankly, the surviving victims and their families are under a life sentence of pain. The criminals have to be sent a message. You can't work the system any more when our bill becomes law.

[Hearing, p. 7 (emphasis added).]
Thus, Senator Bennett's motivation in sponsoring S. 855 was the perception that perpetrators of violent crimes were serving only between one-fifth and one-third of their sentences. It is apparent that this perception does not apply to murder because of its minimum sentence of 30 years' imprisonment without parole. Senator Bennett made this clear when he stated:
Mr. Chairman, I am honored that you are the prime sponsor of the No Early Release Act. We need to insure that *280 those violent offenders who commit crimes, including manslaughter, attempted murder, kidnapping, aggravated assault, arson for hire, aggravated sexual assault, and vehicular manslaughter, are held accountable. At this time we know that murder is exempted from our bill, because since 1982, it carries a mandatory minimum sentence of 30 years without parole. But every violent category fits in, and if someone fails to tell us that the bill has missed a category, we will amend it.

[Hearing, p. 8 (emphasis added).]
At the hearing, an Assistant Prosecutor representing the Monmouth County Prosecutor made a statistical presentation in favor of the bill, mirroring Senator Bennett's concerns. He stated in part:
This piece of legislation represents a marked difference from the amount of time criminals actually serve in New Jersey. Although New Jersey law requires a criminal to serve at least one-third of their sentence before becoming eligible for parole, in reality, these criminals are only serving one-fifth of their sentence based on various programs of good time credit. Consequently, a criminal sentenced to a 20-year term of imprisonment will actually serve four years. And if you can just take a look at the charts presented by this Committee, a 20-year sentence represents only four years of incarceration for some of our most heinous crimes committed in the State of New Jersey.

[Hearing, p. 20.]
The Assistant Prosecutor closed his remarks noting that "for a crime of the first degree, a defendant should be sentenced to a term of imprisonment between 10 and 20 years, not a term of 2 to 5 years." Hearing, p. 21. It is apparent that these concerns do not apply to the sentencing scheme for murder.
The bill passed the Senate on May 16, 1996, but did not pass the Assembly until June 5, 1997. The bill was amended in at least two respects after the hearing. One of the amendments added subsection d, which defines a violent crime. It was never amended to provide expressly that it applied to murder.
Concededly, the general rule is that amendment of a statute after a sponsor's statement explaining the bill's intent may render that statement "a less than definitive guide" to the statute's interpretation. State v. Supervisory Employees Ass'n, supra, 78 N.J. at 70, 393 A.2d 233. S. 855, as originally introduced, applied to "a crime of the first or second degree involving violence," but did not define "crime ... involving violence." The amended bill substituted the phrase "violent crime" and added subsection d, which, in part, defined that phrase to mean "any crime in which the actor causes death, [or] causes serious bodily injury." There is no doubt that under the original bill, a crime causing death, such as aggravated manslaughter and manslaughter, was a crime "involving violence." Subsection d, therefore, neither added to or detracted from NERA's application to certain homicides. Subsection d's significance to NERA was its inclusion of sexual assaults as violent crimes. Additionally, it also narrowed the meaning of violent crime by limiting it to death, serious bodily injury, or the use or threatened use of a deadly weapon. Thus, the addition of subsection d does not affect our analysis and does not tend to dilute the pre-amendment value of the sponsors' statements.
Murder is the only crime for which life imprisonment is an available ordinary sentence. See Serrone, supra, 95 N.J. at 25, 468 A.2d 1050. But, NERA does not define what would constitute 85% of life for the purpose of applying NERA's parole ineligibility period, though other sections of the Criminal Code define the parole ineligibility periods to be imposed in connection with extended-term life sentences. See, e.g., N.J.S.A. 2C:43-7b and c (defining parole ineligibility periods of 25 and 30 years for certain life sentences imposed as *281 extended terms).[1] The absence of such a definition suggests that the Legislature did not intend that NERA would apply to murder.
We are persuaded that if the Legislature had intended NERA to apply to murder, it would have done so expressly and by amending the murder statute. Cf. Township of Mahwah v. Bergen Cty. Bd. of Taxation, 98 N.J. 268, 280, 486 A.2d 818 (1985) (holding that implied repeal of one statute by a later statute "requires clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt"); State v. States, 44 N.J. 285, 291, 208 A.2d 633 (1965) (stating that "repeals by implication are not favored and ... both laws should be given effect if reasonably possible"). Applying NERA to a murder sentence would, in most cases, be tantamount to a life sentence without parole. In the past, when the Legislature intended such a result, it amended the murder statute. See N.J.S.A. 2C:11-3b(2) and (3). We deem it unlikely that the Legislature would disrupt by implication the sentencing scheme for murder, especially when the perception giving rise to NERA, service of inadequate real prison time for certain crimes, does not apply to murder. NERA and the murder statute may stand together, NERA applying to first degree crimes other than murder. Cf. Kemp v. State of New Jersey, 147 N.J. 294, 307, 687 A.2d 715 (1997) (applying the principle that "if the inconsistency between a later act and an earlier one is not fatal to the operation of either, the two may stand together and no repeal will be effected" (quoting 1A Norman J. Singer, Sutherland Statutory Construction § 23.09 at 338-39)).
Finally, and perhaps most significantly, imposition of a virtual life sentence without parole for murder would impact imposition of the death penalty. N.J.S.A. 2C:11-3f provides that in the penalty hearing in a capital case, prior to the jury's deliberations, the trial court must inform the jury of the sentences which may be imposed for murder if the jury does not impose the death penalty. This is a critical element of the jury instructions in a penalty phase hearing. See State v. Ramseur, 106 N.J. 123, 311, 524 A.2d 188 (1987); see also State v. Martini, 160 N.J. 248, 272-74, 734 A.2d 257 (1999); State v. Harris, 156 N.J. 122, 195-98, 716 A.2d 458 (1998); State v. Loftin, 146 N.J. 295, 369-73, 680 A.2d 677 (1996); State v. Martini, 131 N.J. 176, 308-13, 619 A.2d 1208 (1993); State v. Bey, 129 N.J. 557, 601-04, 610 A.2d 814 (1992); State v. Bey, 112 N.J. 123, 179-80, 548 A.2d 887 (1988); cf. Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (holding that trial court's refusal to inform jury in a capital case that the alternative to death, a life sentence, would be without parole eligibility violated due process). In light of NERA's potential impact on a jury's evaluation of the appropriateness of the death penalty in a capital murder prosecution, we conclude it is unlikely that the Legislature would introduce NERA into the death-penalty equation without expressly considering and addressing its implications in that regard, i.e., without expressly amending the murder statute.
The State contends that Manzie may not challenge on appeal the applicability of NERA to murder because he did not challenge it below and, to the contrary, agreed below that NERA applied to murder. The record establishes that Manzie and his attorneys signed the Supplemental Plea Form For No Early Release Act Cases. In that form they acknowledged applicability *282 of NERA to murder. The State further argues that NERA's applicability was the "linchpin" of the plea agreement with the State because the State agreed to abandon prosecution for the aggravated sexual assault of Eddie Werner, thereby avoiding a potential sentence of life imprisonment without parole as authorized in N.J.S.A. 2C:11-3b(3).
The simple response to the State's argument is that a defendant may not acquiesce in the imposition of an illegal sentence. See State v. Horton, 331 N.J.Super. 92, 97, 751 A.2d 141 (App.Div. 2000) (holding that "a court has the inherent power to correct an illegal sentence"); State v. Meyer, 327 N.J.Super. 50, 55, 742 A.2d 614 (App.Div.2000) (holding that defendant, who conceded applicability of NERA when he entered guilty plea, could raise NERA's applicability on appeal because the issue involves the legality of a sentence), certif. denied, 164 N.J. 191, 752 A.2d 1292 (2000); State v. Nemeth, 214 N.J.Super. 324, 327, 519 A.2d 367 (App. Div.1986) (ruling that "there can be no plea bargain to an illegal sentence"). In this regard, the State's reliance on State v. Rumblin, 326 N.J.Super. 296, 302, 741 A.2d 138 (App.Div.1999), certif. granted, 163 N.J. 396, 749 A.2d 370 (2000), is misplaced. There, we determined that Rumblin was subject to NERA, though he pleaded guilty as an accomplice to a first degree robbery. The comment that, "we discern no valid grounds to allow him to now claim" that NERA does not apply, though he had acknowledged its application in this Supplemental Plea Form was dictum. Id. at 302, 741 A.2d 138. In the present case, whether the State has a remedy because we have removed the alleged "linchpin" of its plea agreement is not before us.
We hold that NERA does not apply to murder; therefore, the 85% parole ineligibility period must be eliminated. In all other respects, the judgment is affirmed. We remand for further proceedings.
NOTES
[1] The State argues that NERA must apply to murder; otherwise, a person convicted of a crime other than murder and sentenced to an extended term of life imprisonment under N.J.S.A. 2C:44-3 and N.J.S.A. 2C:43-7a will serve more time under NERA than a murderer not subject to NERA. This argument assumes that NERA applies to extended terms as well as ordinary terms. We have reservations regarding that assumption, in light of the perceived problem NERA is intended to address. In any event, comparing an extended term sentence with an ordinary term lacks analytical value.