772 A.2d 1 (2001)
339 N.J. Super. 359
STATE of New Jersey, Plaintiff-Respondent,
v.
Aaron SHOATS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 2001.
Decided March 20, 2001.
Peter A. Garcia, Acting Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Wendy Alice Way, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, CONLEY and WECKER.
The opinion of the court was delivered by CONLEY, J.A.D.
Following the first day of a jury trial on charges of first degree armed robbery, N.J.S.A. 2C:15-1, second degree attempt to commit burglary while armed with a deadly weapon, N.J.S.A. 2C:18-2a(1) and N.J.S.A. 2C:5-1, third degree aggravated assault, N.J.S.A. 2C:12-1b(4), second degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a, and third degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b, defendant pled guilty to second degree attempted burglary while *2 armed with a firearm, N.J.S.A. 2C:18-2a(1) and N.J.S.A. 2C:5-1.
The charges arose when defendant, who prior thereto had, save for a minor juvenile encounter with the law, an essentially unblemished record and a stable environment in which criminal conduct would appear to be an aberration, went to a neighborhood store late one night with a BB gun intending to "commit a theft." Apparently he was familiar with the victim/owner.[1] It was after the victim's testimony that the State offered a plea to the second degree attempted burglary with a five-year term. The sentence was to be imposed under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, with the mandatory eighty-five percent disqualifier and a five year mandatory probationary term upon release.[2]
Defendant accepted the offer and pled guilty to the second degree attempted burglary. Although the transcript of the plea proceeding makes some reference to the prior day's testimony by the victim, we have not been provided with that testimony, neither was it made part of the sentencing proceeding during which, ordinarily, the NERA hearing required by N.J.S.A. 2C:43-7.2e is to occur.[3]See State v. Staten, 327 N.J.Super. 349, 356-57, 743 A.2d 365 (App.Div.), certif. denied, 164 N.J. 561, 753 A.2d 1153 (2000); State v. Meyer, 327 N.J.Super. 50, 55, 742 A.2d 614 (App.Div.), certif. denied, 164 N.J. 191, 752 A.2d 1292 (2000); State v. Mosley, 335 N.J.Super. 144, 153, 761 A.2d 130 (App. Div.2000).
Ultimately, defendant was sentenced to a five-year term with an eighty-five percent disqualifier under NERA. On appeal, defendant contends:
POINT I THE TRIAL COURT ERRED IN REFUSING TO DOWNGRADE THE DEFENDANT'S OFFENSE TO THE THIRD DEGREE FOR SENTENCING PURPOSES.
POINT II NEW JERSEY'S "NO EARLY RELEASE ACT" VIOLATES STATE AND FEDERAL CONSTITUTIONAL PROHIBITIONS *3 AGAINST CRUEL AND UNUSUAL PUNISHMENT. U.S. CONST., AMENDS. VIII, XIV; N.J. CONST. (1947), ART. I, PAR. 12.
We have considered these contentions in light of the record and existing law. While we agree that the sentencing judge's finding of a risk of recurrence is not supported by the record, we, nonetheless, are satisfied that the five-year term is consistent with the applicable sentencing guidelines, does not offend our judicial conscience, and that the rejection of defendant's request for a downgrade to a third degree sentence is not violative of State v. Megargel, 143 N.J. 484, 673 A.2d 259 (1996), or the applicable statutory criteria. Defendant's constitutional contention has been rejected by our Supreme Court. State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001). See also State v. Austin, 335 N.J.Super. 486, 494, 762 A.2d 1052 (App. Div.2000); State v. Rumblin, 326 N.J.Super. 296, 303, 741 A.2d 138 (App.Div.1999), aff'd, 166 N.J. 550, 766 A.2d 1141 (2001); State v. Newman, 325 N.J.Super. 556, 561-63, 740 A.2d 153 (App.Div.1999), certif. denied, 163 N.J. 396, 749 A.2d 370 (2000).
That would seem to dispose of the appeal. But we cannot ignore what seems to us to be an evident issue as to the legality of a NERA sentence upon the crime to which defendant pled guilty. The factual basis for the plea was the following:
THE COURT: Sir, did you commit the offense to which you're pleading guilty?
THE DEFENDANT: Yes.
THE COURT: Would you tell me what you did that makes you guilty of this offense?
THE DEFENDANT: I walked up to the Food Express.
THE COURT: I can't hear you.
THE DEFENDANT: I walked up to the Food Express, and I tried to gain entrance by pulling on the doors, but the doors wasn't unlocked, and I was armed with the BB gun.
THE COURT: When you were trying to gain entrance, what was your intent? What were you going to do once you got inside? Were you going to commit a theft?
THE DEFENDANT: Yes.
THE COURT: Okay. And I also heard testimony yesterday from Mr. Kim that at the time this occurred, it was right about closing time, but he had already locked the doors, but you thought the place was still going to be open; is that correct?
THE DEFENDANT: Yes.
....
THE COURT: And you are the person that was at the door with the gun as described by Mr. Kim during the hearing yesterday?[4]
THE DEFENDANT: Yes.
Based upon defendant's factual version of what occurred, we conclude NERA would not apply. The Act provides in pertinent part:
a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.
....
d. For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11-1, or uses or *4 threatens the immediate use of a deadly weapon....
For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
The burglary charge here was a second degree crime. But was it a "violent crime"? Defendant neither caused death nor serious bodily injury. He did possess a BB gun during the attempted burglary. Since there is no issue as to the operability of the gun, it is a "deadly weapon" within the meaning of the Act. Compare State v. Austin, supra, 335 N.J.Super. at 493, 762 A.2d 1052, with State v. Cheung, 328 N.J.Super. 368, 370-71, 746 A.2d 38 (App. Div.2000), and State v. Meyer, supra, 327 N.J.Super. at 58, 742 A.2d 614.
But did defendant "use[ ] or threaten[] the immediate use" of the BB gun? Under the factual predicate for his plea, he merely possessed it during his attempt to enter the store. We considered the issue in State v. Johnson, 325 N.J.Super. 78, 89, 737 A.2d 1140 (App.Div.1999), aff'd on other grounds, 166 N.J. 523, 766 A.2d 1126 (2001). There, defendant was convicted of first degree robbery and second degree possession of a firearm with intent to use it against another person, along with two third degree weapons offenses. NERA sentences were imposed upon the first and second degree convictions. Although the opinion does not set forth the facts upon which the convictions were based, it appears that the second degree possessory offense did not arise from the armed robbery offense, but rather was premised upon defendant's possession of a firearm when he was arrested a week later for the robbery. 325 N.J.Super. at 83, 737 A.2d 1140. In that context, we said:
We think it plain that a purely possessory crime does not meet [NERA's definition of "violent crime"]. One cannot by mere possession with an unlawful purpose be deemed to have actually caused either death or serious bodily injury or used or threatened the immediate use of a deadly weapon. These are certainly elements of the robberies for which defendant was indicted and, certainly, threat of use of a deadly weapon was an element of the [first degree] robbery of which defendant was convicted. But they are not elements of the purely possessory crime. A defendant must do more than have the intent to use the weapon unlawfully against the person of another before he meets the statutory definition of a violent criminal. We agree with the holding in State v. Thomas, 322 N.J.Super. 512, 518, 731 A.2d 532 (App.Div.1999) [certif. granted, 162 N.J. 489, 744 A.2d 1211 (2001) ], that the No Early Release Act must be strictly construed. Under that canon of construction, we are satisfied that purely possessory crimes must be excluded from its reach.
[Id. at 89-90, 737 A.2d 1140.]
As we have said, the factual predicate for the "purely possessory" crime for which defendant received a second degree conviction in Johnson occurred several days after the first degree robbery and in a factual context which did not contain a NERA predicate fact.
On the other hand, the Supreme Court in its decision in Johnson upheld the NERA sentence imposed on the first degree armed robbery because the evidence before the jury and upon which the jury convicted defendant of first degree robbery was that during the robbery defendant "aimed" the gun at the victim. Id., *5 166 N.J. at 528-29, 766 A.2d 1126. Thus the factual context of the first degree robbery included proof of a NERA predicate fact. See also State v. Williams, supra, 333 N.J.Super. at 361, 755 A.2d 1168 (plea to second degree possession of a handgun for an unlawful purpose where defendant "brandished the gun on a public street and fired it in the direction of others contemporaneous with a verbal threat to kill."); State v. Meyer, supra, 327 N.J.Super. at 53, 742 A.2d 614 (during the plea to first degree armed robbery, defendant "said that he `demanded the money or asked [the person behind the cash register] for the money and showed him the gun.'"). And see State v. Thomas, 166 N.J. 560, 767 A.2d 459 (2001) ("We hold that where none of the NERA factors is an element of the offense charged, there must be additional proof of a NERA factor before there can be sentence enhancement under the Act." 166 N.J. at 563, 767 A.2d 459).
Although dealing with a hammer (as opposed to a firearm) alleged to have been used as a deadly weapon during the course of a robbery, State v. Grawe, 327 N.J.Super. 579, 744 A.2d 246 (App.Div.), certif. denied, 164 N.J. 560, 753 A.2d 1152 (2000), illustrates the strictures upon NERA's predicate for immediate use or threatened use of a deadly weapon which have been construed as necessary in light of the Legislature's intent to penalize only "the most violent criminals in society." State v. Thomas, supra, 166 N.J. at 570, 767 A.2d 459. In Grawe, defendant pled guilty to first degree robbery. The plea offer left it to the judge to determine whether a NERA sentence was required, with the bargained for term dependent upon that outcome. After conducting a NERA hearing, the judge concluded NERA did not apply. The evidence that was presented established that with a hammer in his possession, defendant robbed a jewelry store. During the course of the robbery, he used the hammer to break the show cases. The employees, however, felt threatened. Nonetheless, in affirming the judge's determination that NERA was not applicable, we said:
Initially, one might be perplexed to reconcile Judge Neustadter's acceptance of defendant's guilty plea to first-degree robbery and his factual conclusion that NERA is inapplicable. This seeming anomaly is explicable because on close examination the definition of deadly weapon for purposes of the robbery statute and for NERA differ somewhat. NERA omits the language "or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury." For purposes of NERA, the intent and conduct of defendant and not the belief, reasonable or not, of the victim controls for sentencing purposes. The judge's acceptance of the armed-robbery guilty plea while finding NERA inapplicable is not inconsistent.
....
Clearly defendant possessed the hammer during the commission of the crime. Unclear, however, is whether that defendant used the hammer as a "deadly weapon" under NERA. There is no admission from defendant that he intended to use the hammer for anything other than to break the glass case. Defendant made no present threats against the person of either [victim]. Defendant did not raise the hammer above his head at any time. He smashed the front of the Rolex case, not the top. The threats defendant directed toward [a victim] about harming his family members were threats of future, not present harm. As recognized by the judge, future threats are not controlling in this context.
We find the judge reasonably concluded that the State failed to meet its burden *6 to establish defendant intended to use the hammer as a deadly weapon. Regardless of his guilty plea to first-degree robbery, the judge reasonably found defendant intended only to use the hammer as part of his plan to commit a theft, not a violent assault. While a person in ... [the victim's] position would fear the possibility of immediate bodily injury, that fear is not controlling under NERA.
Having the opportunity to view the videotape, we observed that defendant never raised the hammer above his waist while he was in front of the Rolex case. Defendant did not have the hammer in his hand while he emptied the Rolex case in fact, defendant almost certainly dropped the hammer on the ground in front of the case and kicked it aside. Even if defendant had the hammer in his hand when he walked over to the Piaget case, the State produced no evidence suggesting that he raised the hammer above his head at that time or threatened [the victim] in any way. Defendant just said, "give me the watches or I'll break the case." When we examine defendant's intent using an objective standard, his use of the hammer did not constitute a "using or threatening the use of a deadly weapon" under NERA. The State failed to meet its burden, whether beyond a reasonable doubt or by a preponderance of the evidence.
[327 N.J.Super. at 593-95, 744 A.2d 246.]
The same can be said here for the factual premise given by defendant when entering his plea. Pursuant thereto, he did not use or threaten the immediate use of the BB gun when he attempted to enter the store. He simply had it in his possession. If mere possession of a BB gun, albeit unquestionably requiring a Graves Act sentence, during the course of the commission of a first or second degree offense is sufficient to trigger NERA, then the language in the Act, "uses or threatens the immediate use of" would be a surplusage. As the Supreme Court recently said:
[W]e have ... narrowly construed NERA to effectuate the Legislature's intent. We do not believe that the Legislature intended to apply NERA when there is only the possibility that the actor would have used physical force. Indeed, NERA requires the actor actually to use or threaten the immediate use a deadly weapon or physical force unless serious bodily injury has been inflicted.
[State v. Thomas, supra, 166 N.J. at 576, 767 A.2d 459.]
We recognize that the victim's statement of what occurred, at least as characterized in the presentence report and by the prosecutor, might provide a basis for a NERA sentence. As set forth in the prosecutor's brief, the events were as follows:
On December 7, 1997, at approximately 11:55 p.m., Kyoung Tae ("Jimmy") Kim was closing his store, the Express Food Market, located at 1469 Nottingham Way in Hamilton Township. He had just finished emptying the first cash register and turned around to empty the second register, when he saw defendant at the door, which Kim had locked. Kim saw that defendant, whom he knew, was wearing a black hood and brandishing a long barreled gun.
According to Kim, he saw defendant try to open the door "with both hands" and "saw a gun in his left hand." As Kim was running to the back of the store, he looked back and saw defendant "trying to point the gun swaying back and forth in [his] direction." Kim called 9-1-1.
As further described in the brief, defendant "trained his weapon on Kim."
*7 We do not know whether this version, consistent with the victim's police statement, is consistent with the victim's trial testimony. But assuming those to have been the facts, then defendant did not simply have the gun with him while he tried to enter the store, rather he "brandished it" or "trained" it at the victim. That would constitute a "use[ ] or threaten[ed] use" of a deadly weapon within the meaning of NERA. See State v. Johnson, supra, 166 N.J. at 527, 766 A.2d 1126 (recognizing that a first degree armed robbery during which a defendant while armed threatens the victims but "does not threaten the victim with the deadly weapon" would not support a NERA sentence, but that NERA did apply on the facts in Johnson because the weapon was "aimed" at the victim).
The difficulty here is that the factual predicate presented during defendant's plea is contrariwise and the victim's version was not made part of a NERA hearing. Moreover, while the judge during the plea concluded NERA applied, he made no factual findings to support that conclusion. To the extent there appears to be any rationale, it seems that the judge thought simply having the BB gun was sufficient. That is incorrect.
We recognize, of course, that part of the deficiencies below was the product of defendant's failure to challenge the application of NERA at the time of his plea or sentence. Indeed, counsel in his appellate brief appears to "concede" the necessary factual predicate, and only indirectly challenges NERA's application in his constitutional attack upon the statute in that he contends the act is unconstitutional as applied to him because "[t]here is no indication that [defendant] pointed the BB gun at any particular person." We, further, recognize the impediments in considering proper application of NERA in the absence of a motion by defendant to withdraw his plea and where the State has entered into a plea bargain with the assumption NERA will apply. See State v. Staten, supra, 327 N.J.Super. at 358, 360, 743 A.2d 365. And see State v. Reardon, supra, 337 N.J.Super. 324, 326-27, 766 A.2d 1203 State v. Rumblin, supra, 326 N.J.Super. at 302, 741 A.2d 138. But, as we said in State v. Meyer, supra, 327 N.J.Super. at 55, 742 A.2d 614:
If a defendant acknowledges at the time of his guilty plea that NERA applies, a question exists as to whether he can subsequently challenge its application on appeal. Clearly, cases like State v. Warren, 115 N.J. 433, 558 A.2d 1312 (1989), and State v. Spinks, 66 N.J. 568, 334 A.2d 23 (1975), which deal with the defendant's right to appeal from a negotiated sentence, are distinguishable from the present case dealing with the validity of a required parole ineligibility term. We nevertheless conclude that the challenge before us is cognizable on appeal because we are dealing essentially with an issue of sentence legality which can be raised even on collateral attack. See R. 3:22-2(c). See also State v. Peters, 129 N.J. 210, 216-17, 609 A.2d 40 (1992); State v. Vasquez, 129 N.J. 189, 194-95, 609 A.2d 29 (1992).
See also State v. Manzie, 335 N.J.Super. 267, 277-78, 762 A.2d 276 (App.Div.2000), certif. granted, 167 N.J. 87, 769 A.2d 1050 (2001).
Premised solely upon the factual predicate for defendant's plea, an enhanced sentence under NERA cannot be imposed. We have previously recognized that the victim's version might have sustained such an enhanced sentence. The question, then, becomes whether the State is entitled to a remand to allow the plea/sentencing judge to conduct a subsection (e) hearing and make such a determination. In *8 Mosley, we concluded that a trial judge may find a NERA predicate fact at a subsection (e) hearing in cases where the underlying criminal conviction contains an element corollary but not precisely corresponding to the NERA fact, and need only do so by a preponderance of the evidence. State v. Mosley, supra, 335 N.J.Super. at 151-57, 761 A.2d 130. However, in State v. Johnson, supra, 166 N.J. at 543, n. 1, 766 A.2d 1126, the Court said: "We have interpreted NERA differently," albeit it also concluded that the result in Mosley would not be affected, that is "resentencing without reference to NERA." Ibid.
Both Johnson and State v. Thomas, supra, 166 N.J. 560, 767 A.2d 459, emphasize defendant's Sixth Amendment rights to a jury determination on all elements of the crime and on the NERA sentencing enhancement fact, as well as the right to compel the State to prove the enhancement fact beyond a reasonable doubt. Johnson, a jury conviction case, draws no distinction in this respect between a conviction by jury and a conviction by plea. Mosley was a plea conviction, yet the Court nonetheless rejected our statement that a judge could find the NERA predicate at a subsection (e) hearing. State v. Johnson, supra, 166 N.J. at 543, n. 1, 766 A.2d 1126. See also, Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
A conviction upon a plea, of course, includes a waiver of a jury trial. We see no constitutional impediment to a waiver as well as of defendant's right to a jury determination as to the NERA sentencing enhancement fact. But such waiver must be knowing and voluntary. There was not an express waiver of that right here.
We have sua sponte raised the issue of NERA's application to the facts of the crime as set forth by defendant during his plea. As both Johnson and Thomas were decided while defendant's direct appeal was still pending, we have applied those decisions in considering the issue. See State v. Johnson, supra, 166 N.J. at 547, 766 A.2d 1126. Application of Johnson and Thomas here would seem to lead to a remand for a jury determination of the NERA issue. We recognize, however, this was not within the contemplation of either the prosecutor or defendant at the time of the plea bargain. Indeed, both assumed NERA applied to defendant's actual version. We have determined it does not.
On remand, if a jury determination on NERA is not agreed to by both the prosecutor and defendant, defendant may not be entitled to the benefit of the remainder of the bargain. See State v. Reardon, supra, 337 N.J.Super. at 326-27, 766 A.2d 1203. The prosecutor may have the right to either reinstate the indicted charges, renegotiate another plea bargain or, perhaps, accept defendant's factual version and seek a resentencing on the second degree offense without, on the one hand, a disqualifier but, on the other hand, without the agreed-to five year limit on the base term. Defendant might also, on remand, waive the right to a jury determination of the NERA fact and, with the agreement of the prosecutor, submit the issue to the judge for a NERA determination with the State's burden being beyond a reasonable doubt. But such waiver must be acknowledged on the record and found by the judge to have been knowingly and voluntarily entered.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Indeed, it appears that one of the motivating factors for the prosecutor's offer of a plea mid-trial was the victim's request that the court be lenient with defendant.
[2] We note that neither the sentencing transcript nor the judgment of conviction includes an imposition of the NERA mandatory probationary term. Were NERA applicable, such a term must be imposed and included in the judgment. However, because defendant pled to a second degree offense, the probationary term could only be for three years. See N.J.S.A. 2C:43-7.2c.
[3] Such a hearing was not conducted during the sentencing. The State in its appellate brief asserts that the judge did conduct the hearing during the plea proceeding. But our review of that transcript reveals only the judge's statement, during his questioning of defendant, that:

The penalty, as far as the prison sentence itself, for a second-degree offense, it could be between five and ten years, but this particular offense under the statute, as I reviewed it yesterday which is 2C:43-7.2, it is 7.2, the No Early Release Act, this is an 85 percent case. Under paragraph d. violent crime is defined for the purposes of this particular paragraph of the statute, it's defined to mean any crime in which the actor causes death, causes serious bodily injury as defined by another part of the statute or uses or threatens the immediate use of a deadly weapon. Then it goes on to say for purposes of this section, deadly weapon means any firearm or other weapon, and a BB gun, BB pistol has been determined by the statute and by case law to be a firearm for the purpose of this statute. And I'm going through that because a lot of people think a BB gun is not a real gun. It's a toy gun, and so it doesn't rise to the level of a deadly weapon. In fact, it's not an imitation firearm. It is a firearm for purposes of the statute. You fall within the 85 percent, No Early Release Act for burglary while armed. And so whatever sentence is meted out, you must serve 85 percent without parole.
[4] As we have said, we do not have the transcript of Mr. Kim's testimony.