767 A.2d 560

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JIMMIE
LEE THOMAS, DEFENDANT–RESPONDENT.

Argued October 11, 2000—Decided February 28, 2001.

562

*Deborah C. Bartolomey*, Deputy Attorney General, argued the cause for appellant (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney).

*Daniel V. Gautieri*, Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres*, Public Defender, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal raises questions concerning the scope of the mandatory sentencing provisions of the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2. Specifically, we must decide whether NERA may be applied to a defendant who pled guilty to second-degree sexual assault, *N.J.S.A.* 2C:14–2b, for touching an eleven-year-old victim in her vaginal area. To answer that question, we must interpret the meaning of the term "physical force" as used in NERA. In a published opinion, the Appellate Division concluded that, based on its legislative history, NERA should not apply to defendant because "physical force" was not an element of the offense to which he pled guilty and he did not admit to committing an "independent act of force or threat of immediate force against the victim that is additional to the constituent elements of the crime." *State v. Thomas*, 322 *N.J.Super.* 512, 516, 731 *A*.2d 532 (App.Div.1999). We granted certification, 162 *N.J.* 489, 744 *A*.2d 1211 (1999), and now affirm. We hold that where none of the NERA factors is an element of the offense charged, there must be additional proof of a NERA factor before there can be sentence enhancement under the Act.

I.

On September 2, 1997, defendant was babysitting for eleven-year-old K.G. Defendant was thirty-nine years old at the time and was K.G.'s grandmother's boyfriend. According to K.G., she was sitting on the couch with defendant when he put his pinky finger into her vaginal opening. K.G. did not tell her mother right away but later confided in her cousin about the incident. The cousin informed K.G.'s mother, who notified the police. When defendant was arrested, he denied that he had penetrated the child.

A Grand Jury indicted defendant for first-degree aggravated sexual assault of a female less than thirteen years of age, *N.J.S.A.* 2C:14–2a(1) (Count One); second-degree sexual assault on a child less than thirteen years of age, *N.J.S.A.* 2C:14–2b (Count Two); second-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4a (Count Three); and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4a (Count Four).

Defendant negotiated a plea agreement with the State in which he pled guilty to second-degree sexual assault on a female under the age of thirteen, a violation of *N.J.S.A.* 2C:14–2b. In his factual statement supporting his guilty plea, defendant admitted touching the victim in her "vaginal area," but denied any penetration. For its part of the plea agreement, the State agreed to dismiss the remaining charges, to permit defendant to be sentenced as if his act were a third-degree offense, and to recommend a four-year term if defendant was sentenced to a term of imprisonment.

The issue whether NERA would apply to defendant's sentence was raised at the plea hearing. The State took the position that NERA applied to defendant. It was part of the plea agreement that if the trial court held that NERA did not apply, the State would be entitled to appeal that decision. It was also part of the agreement that defendant could withdraw his plea if the trial court determined that NERA applied to him. The trial court held that NERA did not apply to defendant because the Act requires the use of physical force beyond that inherent in an act of sexual contact. The trial court found that there was nothing in defendant's factual statement supporting his guilty plea that demonstrated an independent act of force or threat of force against the victim. Defendant was, accordingly, sentenced to a custodial term of four years without a term of parole ineligibility.

The State appealed and the Appellate Division affirmed. *Thomas, supra,* 322 *N.J.Super.* at 521, 731 *A.*2d 532. The Appellate Division rejected the State's argument that our definition of "physical force" in *State in the Interest of M.T.S.,* 129 *N.J.* 422,

444, 609 *A*.2d 1266 (1992), was the same "physical force" contemplated by the Legislature in the definition of a "violent crime" under NERA. *Thomas, supra,* 322 *N.J.Super.* at 519, 731 *A*.2d 532. The Appellate Division found *M.T.S.* "inapposite," stating that *M.T.S.* involved actual penetration, which was not present in this case. *Id.* at 515–16, 731 *A*.2d 532. The panel relied on legislative intent and principles of statutory construction in holding that "physical force" as defined under NERA "requires an independent act of force or threat of force against the victim that is additional to the constituent elements of the crime." *Id.* at 516, 731 *A*.2d 532.

## II.

### A.

The State argues that this Court's definition of "physical force" in *M.T.S.* should be the same definition that is used to determine whether a sexual assault is covered by NERA. The State maintains that because the Legislature failed to define physical force in the NERA statute, the Legislature thereby "expressed [its] satisfaction with this Court's definition" in *M.T.S.* To support that position the State quotes *In re Estate of Posey,* 89 *N.J.Super.* 293, 301, 214 *A*.2d 713 (Cty.Ct.1965), *aff'd,* 92 *N.J.Super.* 259, 223 *A*.2d 38 (App.Div.1966), for the assertion that " '[w]hen words used in a statute have previously received judicial construction, the Legislature will be deemed to be using them in the sense that has been ascribed to them.' "

In rejecting the appellate panel's holding, the State argues that by requiring victims to show an additional act of force beyond that required in *M.T.S.*, "the Appellate Division has returned our law to the antiquated notions about a victim's obligation to 'prove' nonconsent by 'putting up a fight.' " In the alternative, the State argues that if the Court declines to apply the *M.T.S.* definition of "physical force" to the NERA statute, then the Court should

"decide that an adult who commits an unwanted touching against a child implicitly threatens the use of 'physical force.'"

Defendant contends that the Appellate Division "correctly interpreted the relevant legislative history in determining that mere sexual contact does not fall within NERA's definition of 'violent crime.'" He argues that applying the *M.T.S.* definition of "physical force" to NERA cases would render that phrase surplusage.

Defendant maintains that the legislative history of NERA fails to reveal any reference to the Court's decision in *M.T.S.* as influencing the definition of a violent sexual assault. He also argues that, because NERA was intended to apply only to the most violent crimes, "it is apparent that not all sexual assaults were intended to come within the Act." He asserts, that contrary to that legislative intent, the definition of "physical force" urged by the State would mandate application of NERA to all first- and second-degree sexual assaults.

## B.

■ The No Early Release Act, *N.J.S.A.* 2C:43–7.2, which took effect on June 9, 1997, mandates that those who commit first- or second-degree "violent crimes" serve at least 85% of any base term imposed upon conviction. Because the fundamental issue before us is one of legislative intent, "we must first look at the evident wording of the statute to ascertain its plain meaning and intent." *Renz v. Penn Cent. Corp.*, 87 *N.J.* 437, 440, 435 *A.2d* 540 (1981). The Act reads, in pertinent part:

a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined by subsection d. of this section.

. . . .

d. For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11–1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor *uses, or threatens the immediate use of, physical force.*

[*N.J.S.A.* 2C:43–7.2a, d (emphasis added).]

NERA applies only to first- and second-degree offenses. Aggravated sexual assault, *N.J.S.A.* 2C:14–2a, and sexual assault, *N.J.S.A.* 2C:14–2b and c, are first- and second-degree crimes respectively. Because NERA does not define "physical force," we must utilize principles of statutory construction to determine the meaning that should be accorded that phrase and then decide whether NERA applies to all first- and second-degree sexual assaults.

"As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). However, if the statute is not clear and unambiguous on its face, "we consider sources other than the literal words of the statute to guide our interpretive task. . . . '[T]he court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent.' " *Aponte–Correa v. Allstate Ins. Co.,* 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000) (quoting *Township of Pennsauken v. Schad,* 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999)); *State v. McQuaid,* 147 *N.J.* 464, 480–82, 688 *A.*2d 584 (1997). The policy behind the statute also should be considered. *County of Monmouth v. Wissell,* 68 *N.J.* 35, 43–44, 342 *A.*2d 199 (1975).

We find that the disputed language of NERA is not clear and unambiguous. Both the trial court and the Appellate Division concluded that the phrase "physical force" is ambiguous. *Thomas, supra,* 322 *N.J.Super.* at 516, 731 *A.*2d 532. That conclusion was consistent with our observation in *M.T.S.* that "the statutory words 'physical force' do not evoke a single meaning that is obvious and plain." *M.T.S., supra,* 129 *N.J.* at 430–31, 609 *A.*2d 1266. Hence, we must look to extrinsic factors to divine legislative intent.

Under applicable canons of statutory construction, when the Legislature uses words in a statute that previously have been

the subject of judicial construction, the Legislature will be deemed to have used those words in the sense that has been ascribed to them. *State v. Wilhalme*, 206 *N.J.Super.* 359, 362, 502 A.2d 1159 (App.Div.1985), *certif. denied*, 104 *N.J.* 398, 517 *A.*2d 401 (1986). Therefore, the State argues, the Legislature should be deemed to have been aware of our decision in *M.T.S.* and the definition accorded to "physical force" in that case when it enacted NERA. "However, it is possible to interpret an imprecise term differently in two separate sections of a statute which have different purposes." 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.06, at 194 (6th ed.2000) (citing *Abbott Laboratories v. Young*, 920 *F.*2d 984 (C.A.D.C.1990); *Vanscoter v. Sullivan*, 920 *F.*2d 1441 (9th Cir.1990)).

*M.T.S.* involved a seventeen-year-old juvenile charged with delinquency based on non-consensual vaginal penetration of a fifteen-year old, a violation of *N.J.S.A.* 2C:14–2c(1). If the conduct had been committed by an adult, it would have constituted a second-degree offense. *M.T.S., supra*, 129 *N.J.* at 428, 609 *A.*2d 1266. *M .T.S.* required the Court to define "physical force" because the statute under which the juvenile was charged contained two elements: sexual penetration and the use of physical force or coercion without causing severe personal injury to the victim. *N.J.S.A.* 2C:14–2c(1). The Court concluded that "[t]he definition of 'physical force' is satisfied under *N.J.S.A.* 2C:14–2c(1) if the defendant applies any amount of force against another person in the absence of what a reasonable person would believe to be affirmative and freely-given permission to the act of sexual penetration." *M.T.S., supra*, 129 *N.J.* at 444, 609 *A.*2d 1266.

That broad definition was adopted to implement the legislative intent to preclude ambiguous conduct by a victim from being interpreted as consent to sexual penetration within the meaning of *N.J.S.A.* 2C:14–2c(1). Although *M.T.S.* was decided by this Court about five years before NERA became effective, NERA's legislative history does not mention it. Because *M.T.S.* focused on defining an element of the offense charged, and NERA was

enacted to enhance the severity of punishment for certain offenses, we believe the Legislature intended to ascribe a different meaning to "physical force" under NERA than provided in *M.T.S.* when defining an element of *N.J.S.A.* 2C:14–2c(1). We, therefore, turn to NERA's legislative history to discern that difference. *State v. Galloway,* 133 *N.J.* 631, 658, 628 *A.*2d 735 (1993); *State v. Sutton,* 132 *N.J.* 471, 479, 625 *A.*2d 1132 (1993).

## C.

An examination of the legislative history of the Act informs us that NERA was enacted primarily because of New Jersey's alarmingly high rate of parolee recidivism. Stacey L. Pilato, Note, *New Jersey's No Early Release Act: A Band–Aid Approach to Victims' Pain and Recidivism?,* 22 *Seton Hall Legis. J.* 357, 364 (1997). Although the legislative history is scant, that the purpose of the Act was to "increase prison time for offenders committing the most serious crimes in society" is clear. The Senate Law and Public Safety Committee, Statement to Senate Bill No. 855 (Apr. 24, 1996).

Early versions of the bill made the Act applicable to all first- and second-degree crimes involving violence for which a sentence in excess of five years had been imposed. Pilato, *supra,* 22 *Seton Hall Legis. J.* at 362 n. 19. Those versions did not contain what became subsection d. However, the New Jersey State Bar Association opposed that initial bill "because of its potentially catastrophic impact on the prison system." *Id.* at 368 n. 42. The bill was then amended to focus on violent offenders. While an early version of the Act was pending, the Governor's Study Commission on Parole reviewed the bill. Among other things, the Commission "recommended that the Legislature *narrowly define violent crime* because of its potential impact on prison populations." *Id.* at 377 (emphasis added). The Commission recommended a definition similar to the one found in the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:44–3, that establishes the criteria for imposing extended terms of imprisonment for sexual assaults or crimi-

nal sexual contacts involving violence or the threat of violence as defined in *N.J.S.A.* 2C:44–3g. ("[A] crime involves violence or the threat of violence if the victim sustains serious bodily injury[,] . . . or the actor is armed with and uses a deadly weapon or threatens by word or gesture to use a deadly weapon[,] . . . or threatens to inflict serious bodily injury."). *Pilato, supra,* 22 *Seton Hall Legis. J.* at 377 & n. 84. The Legislature adopted several of the Commission's recommendations. *Id.* at 379–81.

After the bill was approved by the Assembly Law and Public Safety Committee, the Assembly Appropriations Committee made a few significant amendments. *Id.* at 382–83. First, apparently following the Commission's recommendation, it narrowed the original definition of violent crime that included *all* first- and second-degree offenses for which the defendant was serving over five years, to "one in which the offender 'causes death [or] serious bodily injury, . . . or uses or threatens the immediate use of a deadly weapon.'" *Id.* at 383 & n. 102 (quoting *L.* 1997, *c.* 117, § 2(d)) (alteration in original). Second, it added first- and second-degree sexual crimes " 'involving [the use of] physical force or the threat of [immediate use of] physical force'" to the definition of violent crime. *Id.* at 383 & n. 103 (quoting *L.* 1997, c. 117, § 2(d)). Those amendments were codified at *N.J.S.A.* 2C:43–7.2d. *State v. Manzie,* 335 *N.J.Super.* 267, 274–75, 762 *A.2d* 276, 279–81 (App. Div. 2000).

Furthermore, the legislative history indicates that the primary purpose to be advanced by NERA was to enhance the punishment for the *most* violent criminals in society. The impetus behind enacting NERA was not for *all* first- and second-degree criminals to serve 85% of their base-sentences, but that only those who are deemed to be the *most* violent in society should face a NERA sentence.

Guided by NERA's legislative history, when the Act is parsed to focus exclusively on sexual assault crimes, it provides: " 'violent crime' means any [aggravated sexual assault or sexual assault] in which the actor causes . . . serious bodily injury as

defined in [*N.J.S.A.* 2C:11–1b], or uses or threatens the immediate use of a deadly weapon[,] . . . [or] any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force." *N.J.S.A.* 2C:43–7.2d. Consequently, NERA covers three types of first- and second-degree sexual assaults: (1) those in which the actor causes serious bodily injury; (2) those in which the actor uses or threatens the immediate use of a deadly weapon, and (3) those in which the actor uses or threatens the immediate use of "physical force." Those three categories are NERA factors.

■ The definition of "physical force" contained in *M.T.S.* is restricted to defining an element of a sexual offense under the Code. Similarly, we have given a special meaning to "physical force" when defining an element of robbery. There, we defined the phrase to mean "some degree of force to wrest the object" from the victim. *State v. Sein,* 124 *N.J.* 209, 216–17, 590 *A.*2d 665 (1991). The Court, in discussing legislative intent, has ascribed different meanings to the phrase when defining an element of a specific offense. Because we have defined physical force differently when defining the phrase as an element in various crimes, we hold that physical force as a NERA sentencing enhancement factor means the same as an element of the offense. Thus, NERA has defined "violent crime" in the context of "statutorily defined elements of a crime," whether sexual in nature or otherwise. *State v. Mosley,* 335 *N.J.Super.* 144, 151, 761 *A.*2d 130 (App.Div. 2000).

One of the three NERA factors pertinent to sexual offenses is essential to satisfy the violence requirement of the Act. Each of the NERA factors represents one or more of the aggravating elements of a first- or second-degree offense. For example, under the Code, causing serious bodily injury can elevate a simple assault, *N.J.S.A.* 2C:12–1a(1), to second-degree aggravated assault, *N.J.S.A.* 2C:12–1b(1); or elevate a second-degree sexual assault, *N.J.S.A.* 2C:14–2c(1), to first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a(6). The use of or immediately threat-

ened use of a deadly weapon can elevate a second-degree robbery, *N.J.S.A.* 2C:15–1a, b, to a first-degree robbery, *N.J.S.A.* 2C:15–1b; or elevate sexual assault, *N.J.S.A.* 2C:14–2c(1), to first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2a(4). The use of or immediately threatened use of physical force can elevate third-degree theft from the person of a victim, *N.J.S.A.* 2C:20–2b(2)(d) and *N.J.S.A.* 2C:20–3a, to first- or second-degree robbery, *N.J.S.A.* 2C:15–1a, b.

By limiting NERA to those sexual crimes involving the infliction of serious bodily injury, or the use or threatened immediate use of a deadly weapon, or the use or threatened immediate use of "physical force," the Legislature must have been aware that not all first- and second-degree sexual assaults would be covered by NERA. There are five types of aggravated sexual assaults that are not covered by NERA because the elements of the offense do not require proof of a NERA factor. *N.J.S.A.* 2C:14–2a(1), a(2)(a), a(2)(b), a(2)(c), a(3), and a(7). There are at least six second-degree sexual assault that are not covered by NERA: *N.J.S.A.* 2C:14–2b, 2c(2), c(3)(a), c(3)(b), c(3)(c), and c(4). Those aggravated sexual assaults and sexual assaults that do not contain a NERA factor as a constituent element of the offense can be brought within the scope of NERA only upon additional proof of a NERA factor.

In limiting the scope of NERA in the area of sexual offenses, we are persuaded by the overriding legislative purpose of designing a statute, not to establish elements of sexual offenses, but to penalize more severely the criminal who is prone to use violence. NERA focuses on the conduct of the perpetrator, rather than on the characteristics of the victim or the victim's actions or reactions. For instance, although use or threatened immediate use of a deadly weapon is a NERA factor, NERA's definition of deadly

weapon omitted that portion of the Code's definition of deadly weapon in *N.J.S.A.* 2C:11–1c that includes the victim's subjective feeling that the weapon was capable of causing death or serious bodily harm. *N.J.S.A.* 2C:43–7.2d.

If the broad scope of NERA urged by the State were adopted, the legislative purpose of minimizing the impact on the prison system would be compromised. For example, data extracted from our Promis/Gavel computer record reveal that for the years 1998, 1999, and 2000, about 500 defendants were convicted of first-degree aggravated sexual assaults, of which approximately 36% involved victims below the age of thirteen years old. During the same interval, there were approximately 806 second-degree sexual assault convictions, approximately 46% of which involved victims below the age of thirteen years old and defendants who were at least four years older than the victim. An across-the-board application of NERA would postpone the earliest parole consideration of the above defendants by approximately 35%.

D.

Here, defendant pled guilty to second-degree sexual assault, a violation of *N.J.S.A.* 2C:14–2b, for touching an eleven-year-old victim in her vaginal area. The sexual assault statute under which defendant entered his guilty plea states that "[a]n actor is guilty of [second-degree] sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim." *N.J.S.A.* 2C:14–2b. That statutory offense does not require proof of a NERA factor: that defendant used or threatened the immediate use of a deadly weapon, that defendant inflicted any serious bodily injury upon the victim, or that defendant either used or threatened the immediate use of physical force. Where, as here, the elements of the sexual offense charged against a defendant do not contain as an element proof of any one or more of the NERA

factors, there must be proof of an independent act of force or violence or a separate threat of immediate physical force to satisfy the NERA factor in a manner that comports with our holding in *State v. Johnson*, 166 *N.J.* 523, 766 *A.*2d 1126 (2001).

The Court's holding today should not be viewed as an indication that we do not deem the offense, involving as it does an eleven-year-old child, to be serious. Our decision is based exclusively on the view that the Legislature has made the decision, whether wisely or otherwise, that not all sexual offenses against children should be subject to NERA. We find defendant's conduct to be both serious and reprehensible. So, too, does the Legislature, for it has made the offense a second-degree crime that carries a sentence of up to ten years with five years of parole ineligibility, and an extended term under *N.J.S.A.* 2C:43–7a(3) and *N.J.S.A.* 2C:44–3g of between ten and twenty years with a term of parole ineligibility up to one-half of the extended sentence. *N.J.S.A.* 2C:43–7b. Some of the first-degree sexual offenders whose offenses do not fall within the scope of NERA will face an extended term up to life imprisonment with twenty-five years of parole ineligibility. *See N.J.S.A.* 2C:44–3g; *N.J.S.A.* 2C:43–7a(1), b. Although NERA would apply to the *M.T.S.*-type cases under today's ruling, the sentencing court's statutorily prescribed sentencing discretion in fixing the base term to which NERA attaches has not been altered. To that extent the court has control over the NERA impact in a given case.

NERA is a sentencing statute, and that means that offenses that do not fall within its scope may still be punished severely under other Code sentencing criteria. Therefore, the State's argument that "the decision in *Thomas* will return our law to the days of demanding resistance from victims while overlooking the assaultive conduct of perpetrators" is unfounded. The *M.T.S.* Court expounded upon the history of rape laws because it had to decide which definition of "physical force" should be used to actually criminalize certain sexual conduct. The Court today is called upon to balance two entirely different policy concerns that

faced the Legislature. The policy choice exercised by the Legislature in this instance was to enhance the sentences of the most violent criminals while recognizing that less violent first-and second-degree offenders will still be punished severely. The fact that the sexual assault committed by defendant is graded a second-degree offense is a legislative recognition of how harmful society perceives this crime to be. NERA accomplishes the same goal by mandating that only the most violent criminals serve 85% of their sentences. Hence, sexual assault under our Code remains intact and the most violent perpetrators of sexual assaults will be punished even more severely under NERA.

### III.

The State alternatively argues that NERA should apply to defendant even under the Appellate Division's definition of "physical force." The State maintains that "an adult who commits an unwanted touching against a child implicitly threatens the use of 'physical force,' as that term was defined in *Thomas*." The State articulates this argument as follows:

Given the strength and size advantage, the greater authority, social status and sophistication of an adult, a child confronted by an unwanted sexual imposition from an adult actor has little choice except to submit. This Court should therefore recognize the implicit threat of physical force "independent from the 'simple' act of the sexual touching," *Thomas*, 322 *N.J.Super.* at 519–20, 731 *A.*2d 532, that is inherent in this crime, and hold that NERA applies to all first- and second-degree sexual assaults perpetrated by adults against children.

The State relies on a series of cases involving the application of 18 *U.S.C.* § 16, which defines a "crime of violence" for purposes of determining whether a crime is an aggravated felony under 8 *U.S.C.* § 1101(a)(43). According to 18 *U.S.C.* § 16, a "crime of violence" is

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Federal cases hold that sexual abuse is a crime of violence under 18 *U.S.C.* § 16(b) because when an adult sexually assaults a child, there is always a substantial risk that physical force will be used to ensure the child's compliance. *See, e.g., Ramsey v. INS,* 55 *F.*3d 580, 583 (11th Cir.1995) (holding the offense of attempted lewd assault on a minor under sixteen "is a felony involving a substantial risk that physical force may be used against the victim"); *United States v. Reyes–Castro,* 13 *F.*3d 377, 379 (10th Cir.1993) (stating that "when an older person attempts to sexually touch a child under the age of fourteen, there is always a substantial risk that physical force will be used to ensure the child's compliance"). The State argues that the reasoning of those cases should apply in the context of NERA. The State maintains that there is an inherent threat of physical force in a sexual assault by an adult against a child and that therefore NERA applies to all first- and second-degree sexual assaults committed by adults against children.

We agree that the Legislature could have made NERA applicable to all first- and second-degree offenses or made it applicable to all tender-years sexual assaults. But, as we stated before, the Legislature chose instead to narrowly define violent crime. We have, therefore, narrowly construed NERA to effectuate the Legislature's intent. We do not believe that the Legislature intended to apply NERA when there is only a possibility that the actor would have used physical force. Instead, NERA requires the actor actually to use or threaten the immediate use of a deadly weapon or physical force unless serious bodily injury has been inflicted. If we have misinterpreted the legislative intent, we invite a correction of course by the Legislature.

IV.

The judgment of the Appellate Division is affirmed.

PORITZ, C.J., dissenting.

The Court today holds that the No Early Release Act ("NERA") applies only to sexual assaults and aggravated sexual

assaults in which physical force beyond that inherent in the act of penetration or contact is used or threatened. Because I believe that holding conflicts with and is precluded by the Court's decision in *State in the Interest of M.T.S.,* 129 *N.J.* 422, 609 *A.*2d 1266 (1992), I respectfully dissent.

*N.J.S.A.* 2C:14–2c(1) makes sexual penetration a crime of the second degree where "the actor uses physical force and coercion, but the victim does not sustain severe personal injury." In *M.T.S.* the Court examined that language in the context of "almost two hundred years of rape law in New Jersey." *M.T.S., supra,* 129 *N.J.* at 431, 609 *A.*2d 1266. Whether there had been "physical force and coercion" constituting rape had traditionally been viewed in relation to the victim's resistance thereby shifting attention from the defendant's assaultive conduct to the victim's response. *Id.* at 432, 609 *A.*2d 1266. The Court found that when the Legislature adopted the current Code of Criminal Justice in 1978, it reformulated the statutory provisions concerning rape:

> In redefining rape law as sexual assault, the Legislature adopted the concept of sexual assault as a crime against the bodily integrity of the victim. Although it is possible to imagine a set of rules in which persons must demonstrate affirmatively that sexual contact is unwanted or not permitted, such a regime would be inconsistent with modern principles of personal autonomy. The Legislature recast the law of rape as sexual assault to bring that area of law in line with the expectation of privacy and bodily control that long has characterized most of our private and public law. In interpreting "physical force" to include any touching that occurs without permission we seek to respect that goal.
>
> [*Id.* at 445–46, 609 *A.*2d 1266 (citations omitted).]

Most important, the Court held

> that any act of sexual penetration engaged in by the defendant without the affirmative and freely-given permission of the victim to the specific act of penetration constitutes the offense of sexual assault. Therefore, physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful. The definition of "physical force" is satisfied under *N.J.S.A.* 2C:14–2c(1) if the defendant applies any amount of force against another person in the absence of what a reasonable person would believe to be affirmative and freely-given permission to the act of sexual penetration.
>
> [*Id.* at 444, 609 *A.*2d 1266.]

I have discussed *M.T.S.* in some detail because I believe that we are now backing away from the principles so eloquently described

by Justice Handler in that opinion. We determined there that the statutory language "physical force and coercion" does not require physical force beyond that involved in unwanted sexual penetration or sexual contact. Today we are reverting back to the more traditional view rejected by the 1978 revisions to the Criminal Code and by this Court in *M.T.S.* Implicit in the traditional view is the notion that when an actor commits sexual assault without using or threatening any *extra* physical force the assault does not involve violence. I believe, and *M.T.S.* held, that a sexual assault is a violation of the victim's bodily integrity and is inherently violent. That view lies at the very heart of the reform of our sexual assault laws. *See M.T.S., supra,* 129 *N.J.* at 445–46, 609 *A.*2d 1266.

It is against this backdrop that the Court interprets the same language in NERA. In defining violent crimes for sentence enhancement purposes under NERA the Legislature stated:

> For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11–1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor *uses, or threatens the immediate use of, physical force.*
>
> [*N.J.S.A.* 2C:43–7.2d (emphasis added).]

As in the sexual assault statute, NERA does not define "physical force," and as in *M.T.S.*, the Court finds that the disputed language is "ambiguous." *Ante* 166 *N.J.* at 567, 767 *A.*2d at 463. The Court further finds that the Legislature is presumed to have known about our construction of the disputed language in *M.T.S.* but, inexplicably, decides that "physical force" should now be interpreted differently in NERA. *Ante* 166 *N.J.* at 568, 767 *A.*2d at 463. I see no basis for a departure from that basic rule of statutory construction. The purpose of NERA is to "to penalize more severely the criminal who is prone to use violence." *Ante* 166 N.J. at 572, 767 A.2d at 465. That purpose is not subverted by the *M.T.S.* conclusion that sexual assault is inherently violent.

Moreover, utilizing the *M.T.S.* definition of sexual assault does not render the "physical force" language of NERA mere surplus-

age. We expressly rejected that contention in *M.T.S.* when we found that "as a description of the method of achieving 'sexual penetration,' the term 'physical force' serves to define and explain the acts that are offensive, unauthorized, and unlawful." 129 *N.J.* at 445, 609 *A.*2d 1266. Similarly, the term "physical force" in *N.J.S.A.* 2C:43–7.2d does not add additional force beyond that of the actual sexual assault but, rather, serves to describe the crimes defined in *M.T.S.* and included under NERA.

Finally, like the majority, I too would invite the Legislature to clarify its intentions in respect of NERA. I recognize that the Legislature may ultimately choose to exclude certain categories of sexual assault from the NERA parole ineligibility requirements. Until then, however, I am unwilling to attribute to the Legislature an intent to require additional force beyond that of unwanted sexual penetration or contact before those crimes can be classified as violent for the purposes of NERA sentencing.

ZAZZALI, J., joins in this opinion.

*For affirmance*— Justices STEIN, COLEMAN and LaVECCHIA—3.

*Dissenting*—Chief Justice PORITZ, and Justice ZAZZALI—2.