793 A.2d 638

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
BRIAN PAROLIN, DEFENDANT–RESPONDENT.

Argued January 15, 2002—Decided March 27, 2002.

*Richard E. Incremona,* Assistant Prosecutor, argued the cause for appellant (*John A. Kaye,* Monmouth County Prosecutor, attorney; *Mary R. Juliano,* Assistant Prosecutor, of counsel and on the brief).

*Andrew T. Walsh* argued the cause for respondent (*Waldman & Moriarty*, attorneys; *Charles M. Moriarty*, on the letter in lieu of brief).

*Carol M. Henderson*, Assistant Attorney General, argued the cause for *amicus curiae*, Attorney General of New Jersey (*David N. Samson*, Attorney General, attorney; *Melaney S. Payne*, Deputy Attorney General, of counsel and on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This case requires us to determine whether the parole ineligibility requirement of the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, applies to a second-degree conviction for possession of a firearm with the purpose to use it unlawfully against another person, a violation of *N.J.S.A.* 2C:39–4a. In *State v. Thomas*, 166 *N.J.* 560, 573, 767 *A.2d* 459 (2001), we held that when "the elements of [an] offense charged against a defendant do not contain as an element proof of any one or more of the NERA factors, there must be proof of an independent act of force or violence or a separate threat of immediate physical force to satisfy the NERA factor." We hold that although the elements of some second-degree unlawful possession of firearms, explosive substances or destructive devices offenses under *N.J.S.A.* 2C:39–4 do not contain a NERA factor, in this case defendant's acknowledgment at his plea hearing that, contemporaneously with the unlawful possession of a loaded rifle, he used that rifle unlawfully against his former girlfriend by pointing it "right at her ... to scare her ... and threatened to shoot her" to get her to leave his house, satisfied a NERA factor.

I.

Defendant was indicted for: (1) pointing a loaded firearm at his former girlfriend, a fourth-degree offense under *N.J.S.A.* 2C:12–1b(4); (2) making terroristic threats against his former girlfriend, a third-degree offense under *N.J.S.A.* 2C:12–3b; (3) possession of

a .22 caliber rifle with purpose to use it unlawfully against his former girlfriend, a second-degree offense under *N.J.S.A.* 2C:39-4a; and (4) aggravated assault on his former girlfriend by causing or attempting to cause serious bodily injury to her, a second-degree offense under *N.J.S.A.* 2C:12-1b(1). All of the offenses were alleged to have occurred on October 23, 1998 at the same time and place.

Defendant pled guilty on March 13, 2000 to fourth-degree aggravated assault for pointing the rifle at his former girlfriend and second-degree possession of a rifle to use unlawfully against his former girlfriend. He was informed during the plea hearing that he was "subject to the Graves Act and the State will also be requesting" a NERA term of parole ineligibility. At a sentencing hearing conducted on April 20, 2000, the trial court declined to impose a NERA term, reasoning that although the facts required a NERA sentence, it was not free to disregard *State v. Johnson*, 325 *N.J.Super.* 78, 89, 737 *A.*2d 1140 (App.Div.1999), holding that possession of a firearm for an unlawful purpose does not qualify for a NERA sentence. This Court initially denied Johnson's petition for certification on January 20, 2000. 163 *N.J.* 12, 746 *A.*2d 458 (2000). However, the Court on March 8, 2000 vacated that order and granted Johnson's petition for certification limited to his claim that NERA is unconstitutional. 163 *N.J.* 393, 749 *A.*2d 367 (2000). The Court modified and affirmed the Appellate Division's disposition of the constitutional claim on February 28, 2001 without deciding whether NERA covers second-degree possessory offenses. 166 *N.J.* 523, 766 *A.*2d 1126 (2001). Because the trial court was bound to follow the Appellate Division's decision in *Johnson*, it sentenced defendant, pursuant to the Graves Act, *N.J.S.A.* 2C:43-6c, on the possessory offense to a custodial term of five years with three years of parole ineligibility, and a concurrent term of eighteen months on the aggravated assault. The issue before us concerns the difference between the thirty-six months of parole ineligibility imposed and the fifty-one months required by NERA, if applicable. On the State's appeal, the Appellate Division affirmed. *State v. Parolin*, 339 *N.J.Super.* 10,

770 *A.*2d 1204 (2001). We granted the State's petition for certification, 169 *N.J.* 609, 782 *A.*2d 426 (2001), and now reverse.

## II.

The State, through the Monmouth County Prosecutor, argues that when defendant provided the factual basis for his guilty plea he admitted that he possessed and used the loaded rifle to threaten his former girlfriend, and that that admission triggered NERA. The State also argues that the Appellate Division misapplied this Court's decision in *State v. Thomas.* The Attorney General, as *amicus curiae,* also contends that because defendant admitted in his factual statement in support of his guilty pleas that "he used or threatened the immediate use of a deadly weapon by pointing a loaded firearm at the victim, threatening her, and eventually firing the weapon, causing injury to the victim," the Appellate Division erred in not applying NERA. Defendant argues that his non-NERA sentence is not illegal and, therefore, the State lacks authority to prosecute this appeal. We reject defendant's contention substantially for the reasons stated by the Appellate Division. *State v. Parolin, supra,* 339 *N.J.Super.* at 13–14, 770 *A.*2d 1204.

## A.

First, we address the elements of second-degree possession of a firearm with purpose to use it unlawfully against another person and the proofs presented to establish those elements. Although the second-degree possessory charge is an inchoate offense in the sense that it seeks to deter the commission of other more serious crimes, the legislative intent is to focus on the intent or purpose for the possession rather than the possession itself. *State v. Brims,* 168 *N.J.* 297, 303–04, 774 *A.*2d 441 (2001). Possession of a firearm for an unlawful purpose has four elements:

(1) the object possessed was a "firearm" within the meaning of *N.J.S.A.* 2C:39–1(f); (2) the firearm was possessed by defendant as defined in *N.J.S.A.* 2C:2–1c; (3) the defendant's purpose in possessing the firearm was to use it against the person or

property of another; and (4) the defendant intended to use the firearm in a manner that was unlawful.

[*State v. Diaz*, 144 *N.J.* 628, 635, 677 *A.*2d 1120 (1996).]

Proof of the fourth element "requires 'an identification of the unlawful purpose or purposes suggested by the evidence.'" *State v. Brims, supra*, 168 *N.J.* at 304, 774 *A.*2d 441 (quoting *State v. Villar*, 150 *N.J.* 503, 511, 696 *A.*2d 674 (1997)).

Possession of a firearm for an unlawful purpose generally falls into one of two main categories or a combination thereof. *State v. Diaz, supra*, 144 *N.J.* at 636, 677 *A.*2d 1120. In the majority of cases the unlawful possession charge " 'is coupled with a charge of an act accomplished with the gun.'" *Ibid.* (quoting *State v. Jenkins*, 234 *N.J.Super.* 311, 315, 560 *A.*2d 1240 (App.Div.1989)). Under that scenario the criminal act effected with the firearm provides the factual underpinning that demonstrates that the firearm was possessed for an unlawful purpose. *State v. Diaz, supra*, 144 *N.J.* at 636, 677 *A.*2d 1120. Under those circumstances, the substantive offense committed with the firearm merges with the possessory offense. *Ibid.* The second category into which the possessory offense falls is the one in which the unlawful purpose for possessing the firearm is established independently of the commission of a substantive offense. *Ibid.* The record before us fits within those cases in which use of the firearm to commit another offense (here, the aggravated assault) is used to establish the unlawfulness of the possession charge.

When pleading guilty to possession of the rifle for an unlawful purpose, defendant used the factual underpinning for his guilty plea to fourth-degree aggravated assault to establish the required identifiable purpose for possession of the weapon. To accomplish that purpose, defendant stated the following:

A. Well, Your Honor, I just took the gun out just to scare the girl, she was driving me crazy. I couldn't get her out of my house. I took the gun out to scare her. That is all I did.

[DEFENSE ATTORNEY]: May I ask some questions, Judge?

THE COURT: Yes. You better.

BY [DEFENSE ATTORNEY]

Q. While you were in the house, did you point the gun at her?

A. Yeah, just to scare her.

Q. But you did it with the purpose to scare her?

A. I was trying to scare her.

Q. The gun was loaded?

A. Yeah.

Q. You pointed it right at her?

A. Yeah.

Q. And said "get out"?

A. Yeah.

Q. And the purpose of getting that gun was not for target practice?

A. No.

Q. The purpose of the gun was to point it at her to scare her into leaving the house, is that right?

A. That is exactly right.

THE COURT: Are you satisfied with the unlawful purpose?

[ASSISTANT PROSECUTOR]: No, Judge.

BY [ASSISTANT PROSECUTOR]:

Q. At some point, you threatened to shoot her with that gun?

A. Yes.

Q. At some point you hit her with the rifle, with the barrel of the rifle?

A. No, I did not.

Q. At some point, you shot that gun?

A. Yes.

Q. She was standing outside of your house at the time?

A. Yes, sir.

Q. And when you shot the gun the bullet ricocheted off the pavement and hit her in the leg?

[DEFENSE ATTORNEY]: We don't dispute that, Judge. That did happen.

THE COURT: Did he answer yes or no?

THE DEFENDANT: No. I mean the way it looked to me, no. I mean—

[DEFENSE ATTORNEY]: Just so it is clear, Judge, he is not disputing it. He didn't physically—

THE COURT: He is disputing it.

[DEFENSE ATTORNEY]: Brian, you have seen the reports?

THE DEFENDANT: Yeah. Well, I guess I hit her in the leg then. I mean, yeah, yes.

[DEFENSE ATTORNEY]: Judge, what he is talking about, they can't pull it out. Clearly, the bullet hit the ground.

THE COURT: But it is a piece of lead in her.

[DEFENSE ATTORNEY]: Maybe, maybe not.

THE COURT: What is it.

[DEFENSE ATTORNEY]: It could be the cement. We don't dispute what hit caused something to go into her.

Clearly, we caused the injury. There is no question about that, but they have never been able to pull it out. They have never been able to see it. There is no question about it.

THE COURT: It shows up on an x-ray?

[DEFENSE ATTORNEY]: Yes.

THE COURT: It sounds like metal.

[DEFENSE ATTORNEY]: I don't really dispute that, Judge.

THE COURT: Are you satisfied now?

[ASSISTANT PROSECUTOR]: Now, I am, Judge.

That testimony, in our view, clearly establishes that defendant committed a violent crime within the meaning of NERA.

## B.

■ Next, we consider whether NERA is applicable to this case. The version of NERA that was in effect on October 23, 1998 when defendant committed the offenses in question became effective June 9, 1997. It mandated that those who commit first- or second-degree "violent crimes" must serve at least 85% of the base term imposed upon conviction. The statute then provided, in pertinent part:

a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.

. . . .

d. For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of *N.J.S.* 2C:11–1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.

. . . .

e. A court shall not impose sentence pursuant to this section unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to him of the ground proposed. The defendant shall have the right to hear and controvert the evidence against him and to offer evidence upon the issue.

[*N.J.S.A.* 2C:43–7.2a, d, e. (2000). ]

In light of that statutory language, this Court has concluded that the prior version of NERA covers three types of first- and second-degree violent crimes: (1) those in which the actor causes death or serious bodily injury; (2) those in which the actor uses or threatens the immediate use of a deadly weapon; and (3) those in which the actor uses or threatens the immediate use of physical force. "Those three categories are NERA factors." *State v. Thomas, supra*, 166 *N.J.* at 571, 767 *A.*2d 459. Although the elements of defendant's second-degree offense—possession of a rifle to use unlawfully against his former girlfriend—did not require proof of a NERA factor, both the State and defendant relied on his use of the rifle to scare, frighten and threaten the victim to prove the identifiable unlawful purpose element of the possessory offense. Based on defendant's own sworn testimony, he established the second and, arguably, the third NERA factors by pointing the rifle at the victim and threatening to shoot her unless she left his house immediately. Indeed, he fired the weapon and the victim was not only frightened, but was injured as well. Consequently, the trial court was correct when it observed that the factual basis for the pleas satisfied NERA's violent crime requirement.

The present case is to be distinguished from *State v. Williams*, 333 *N.J.Super.* 356, 755 *A.*2d 1168 (App.Div.2000), *rev'd*, 168 *N.J.* 287, 773 *A.*2d 1152 (2001). There, defendant was convicted by a jury of possession of a handgun for an unlawful purpose and possession of the gun without a permit. *Id.* at 357, 755 *A.*2d 1168. In a post-trial NERA hearing the trial court, not the jury, found that defendant had "brandished the gun on a public street and fired it in the direction of others contemporaneous with a verbal threat to kill. Pedestrians and bystanders, including a small child, were placed in danger by defendant's use of the firearm." *Id.* at 361, 755 *A.*2d 1168. The Appellate Division upheld the imposition of a NERA sentence. *Ibid.* After we rendered our decision in *State v. Johnson*, 166 *N.J.* 523, 543, 766 *A.*2d 1126 (2001), holding that when convictions are based on jury verdicts, a jury must

determine the NERA sentencing factor, we vacated the NERA sentence in *Williams* because the judge, not the jury, made the NERA finding. *State v. Williams,* 168 *N.J.* 287, 773 *A.*2d 1152 (2001). Unlike *Williams,* defendant's conviction is based on his guilty pleas and at least one NERA factor was admitted by defendant in his factual statements at the plea hearing. Therefore, *Williams* is distinguishable. For all of the foregoing reasons, we hold that the version of NERA that was in effect when defendant committed his offenses applies here. To the extent that the Appellate Division's holding in *Johnson, supra,* 325 *N.J.Super.* at 78, 737 *A.*2d 1140, is inconsistent with this opinion, it is overruled.

## C.

■  Subsequent to the entry of the judgment of conviction and appellate review in this case, the Legislature amended NERA to specifically enumerate the first- and second-degree offenses to which NERA applies. *L.* 2001, *c.* 129 (effective June 29, 2001). The law was changed in response to the Appellate Division decisions in *State v. Manzie,* 335 *N.J.Super.* 267, 276, 762 *A.*2d 276 (2000) (holding that NERA does not apply to murder because there is a separate sentencing scheme for murder), *aff'd,* 168 *N.J.* 113, 773 *A.*2d 659 (2001), *State v. Mosley,* 335 *N.J.Super.* 144, 149, 761 *A.*2d 130 (2000) (holding that NERA does not apply to tender years sexual assaults without physical force), *certif. denied,* 167 *N.J.* 633, 772 *A.*2d 934 (2001), and *State v. Thomas,* 322 *N.J.Super.* 512, 515–16, 731 *A.*2d 532 (1999) (same), *aff'd,* 166 *N.J.* 560, 767 *A.*2d 459 (2001). Assembly Appropriations Committee, *Statement to Assembly Bill No. 3201,* at 1 (June 4, 2001). The Legislature repealed both former subsection d, that defined "violent crime," and subsection e, that outlined the requirements for a NERA sentencing hearing. As amended, NERA now specifically applies to the following first- and second-degree offenses:

(1) *N.J.S.* 2C:11–3, murder;

(2) *N.J.S.* 2C:11–4, aggravated manslaughter or manslaughter;

(3) *N.J.S.* 2C:11–5, vehicular homicide;

(4) subsection b. of *N.J.S.* 2C:12–1, aggravated assault;

(5) subsection b. of *N.J.S.* 2C:12–11, disarming a law enforcement officer;

(6) *N.J.S.* 2C:13–1, kidnapping;

(7) subsection a. of *N.J.S.* 2C:14–2, aggravated sexual assault;

(8) subsection b. of *N.J.S.* 2C:14–2 and paragraph (1) of subsection c. of *N.J.S.* 2C:14–2, sexual assault;

(9) *N.J.S.* 2C:15–1, robbery;

(10) section 1 of *P.L.* 1993, c. 221 (C.2C:15–2), carjacking;

(11) paragraph (1) of subsection a. of *N.J.S.* 2C:17–1, aggravated arson;

(12) *N.J.S.* 2C:18–2, burglary;

(13) subsection a. of *N.J.S.* 2C:20–5, extortion;

(14) subsection b. of section 1 of *P.L.* 1997, c. 185 (C.2C:35–4.1), booby traps in manufacturing or distribution facilities; or

(15) *N.J.S.* 2C:35–9, strict liability for drug induced deaths.

[*N.J.S.A.* 2C:43–7.2d (2001).]

Because the catalog of offenses to which NERA now applies does not include second-degree possession of a firearm for unlawful use against another person, the question is whether the amendment should be applied retroactively to this case. It should not. The legislative intent is designed to clarify NERA's application to murder and certain sexual offenses and to overturn the Appellate Division's interpretation of NERA in reported decisions, not to correct any legislative drafting error. Consistent with the presumption that criminal legislation is to have prospective effect, *see United States v. Morena,* 245 *U.S.* 392, 395, 38 *S.Ct.* 151, 152, 62 *L.Ed.* 359 (1918); *Phillips v. Curiale,* 128 *N.J.* 608, 615, 608 *A.*2d 895 (1992); *Gibbons v. Gibbons,* 86 *N.J.* 515, 522, 432 *A.*2d 80 (1981); *Street v. Universal Maritime,* 300 *N.J.Super.* 578, 580, 693 *A.*2d 535 (App.Div.1997), the Legislature stated that the amendments would take effect immediately. *L.* 2001, c. 129. Moreover, this Court has already declined to apply the NERA modification amendments retroactively when the Court denied the State's motion to reconsider *Manzie* in light of those amendments.

## III.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division to merge the aggravated assault conviction with the conviction for possession of a rifle to use unlawfully against the person of defendant's former girlfriend, and to impose a NERA sentence.

LONG, J., dissenting.

NERA is meant to apply only to the "most violent" first- and second-degree offenders in our society. *State v. Thomas,* 166 *N.J.* 560, 570, 767 *A.*2d 459 (2001). Brian Parolin is simply not such a person. The facts he supplied at his plea hearing clearly warrant punishment but fall far short of establishing him as a member of the class of offenders NERA was enacted to harness. That he was never intended to fall within the ambit of NERA is underscored by the recent amendments to the statute that exclude from its purview the only qualifying crime to which Parolin pled guilty, second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:43-7 .2d. That clarification, in my view, sheds light on the original meaning of NERA and should inform our assessment of this case. I would, therefore, affirm the judgment of the Appellate Division.

Justice ZAZZALI joins in this dissent.

For reversal and remand—Chief Justice PORITZ and Justices STEIN, COLEMAN, and LaVECCHIA—4.

*For affirmance*—Justices LONG and ZAZZALI—2.