# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0533-18T4

STATE OF NEW JERSEY
IN THE INTEREST OF E.R.M.

Argued March 27, 2019 – Decided June 17, 2019

Before Judges Alvarez and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FJ-12-0526-18.

Christopher L. Kuberiet, Assistant Prosecutor, argued the cause for appellant State of New Jersey (Andrew C. Carey, Middlesex County Prosecutor, attorney; Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

Patrick C. O'Hara, Jr., argued the cause for respondent E.R.M. (Del Vacchio O'Hara, PC, attorneys; Patrick C. O'Hara, Jr., of counsel and on the brief).

PER CURIAM

On leave granted, the State appeals from a family court judge's August 30, 2018 denial of the State's motion for referral of a juvenile to the Law Division. E.R.M. was charged with offenses, which if committed by an adult, were:  first-

degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); second-degree sexual assault, N.J.S.A. 2C:14-2(b); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). We reverse and remand the matter to be heard in the Law Division.

E.R.M. was sixteen years old when the relevant events occurred. The victim, who we shall refer to as Mary, was twelve. E.R.M.'s family and Mary's family shared a home for some months. Beginning at the end of July 2017, E.R.M. and Mary were boyfriend and girlfriend.

On a particular afternoon, when Mary returned home after summer school, E.R.M. was on the porch with some friends, smoking marijuana. E.R.M. followed her inside, and pushed her onto a bed in her cousin's room. He removed her clothing, grabbed her hands, and while wearing a condom, penetrated her with force. Mary told him "no," and repeatedly tried to push him off as he lay on top of her. She also tried biting him and asking him to stop, but he refused. Mary began to bleed. Eventually, Mary succeeded in pushing E.R.M. away, and she ran to a nearby friend's home.

E.R.M. asked her the following day if she wanted to have sex again, Mary refused and the relationship ended soon after. In November 2017, Mary's

A-0533-18T4

mother learned about the assault from her nephew, who in turn had heard E.R.M. telling his friends about having sex with Mary. The charges followed.

When officers attempted to arrest E.R.M., he resisted, including spitting on an officer's face. Initially, E.R.M. claimed he and Mary had never dated, but eventually admitted that they had "fooled around a little bit" and had sex on one occasion. E.R.M. insisted it was consensual and that he did not force her to do it, although she had not wanted anyone to find out about it. When she asked him to stop, he complied. E.R.M. said after he stopped, he and Mary stayed in bed for a few minutes before she left for her own room. He said he broke up with Mary because she was "too little."

The prosecutor's statement of reasons for referral addressed each and every element of N.J.S.A. 2A:4A-26.1(c)(3) individually and at length, including the description of the offense. The statement included E.R.M.'s expert's opinion that E.R.M. was developmentally immature and had bipolar disorder. Although the statement contained "positive information" regarding E.R.M., the State concluded that E.R.M. "knew what he was doing, knew that the victim was twelve years-old, had the opportunity to consider whether or not he wanted to pursue the sexual encounter to completion, and even had the ability

3

to stop the sexual assault." This included the fact that E.R.M. had "the forethought to be prepared with a condom[.]"

E.R.M. had been previously adjudicated delinquent on six other occasions and had been placed on probation, which he violated, and that was eventually converted to a deferred disposition. He had been involved with other court supported programs. Mary and her family favored referral to adult court.

The family court judge who conducted the waiver hearing found that E.R.M. was at least fifteen when the offense was committed, and that probable cause existed as to the charged offenses. In a thirty-seven page opinion, the judge rejected each of the State's conclusions and made her own findings, relying in part upon the expert's opinion.

The judge stated that the juvenile court's primary responsibility was the "rehabilitation of juvenile offenders." Regarding review of the prosecutor's submissions, the judge said: "[t]here is no guidance as to whether a court should undertake a substantive review of the evidence produced at the hearing that is relevant to the statutory factors or whether a court should merely accept the State's interpretation of the evidence." The judge further opined that the statute was unclear as to whether the State should consider the evidence only to establish probable cause, "or whether it has a higher burden when considering

4

the factors to create a reasonable narrative from the conflicting accounts and evidence."

In the judge's view, the amended waiver statute, N.J.S.A. 2A:4A-26.1, effective March 1, 2016, was "sufficiently ambiguous as to the extent of the court's 'review' and the extent of the prosecutor's 'consideration' of the facts relevant to the factors and as to how the factors, especially factors (g) and (h), should be considered by the prosecutor when making his decision" as to require consideration of the law's legislative history. She concluded the statute's lack of clarity required "consideration of extrinsic evidence" in light of the importance of the waiver decision.

The judge considered the new law to "circumscribe the prosecutor's discretion by eliminating mandatory waiver and subjecting all waiver decisions to judicial review." Therefore, the waiver process as amended, "was intended to increase the court's role[.]" She looked to the legislative history in support of that position. This included at least one legislator's motivation to keep juvenile offenders from being mixed with adult incarcerated populations.[1]

---

[1] In the ordinary course, even if waived to the Law Division, juvenile offenders are not housed with adult offenders. See R. 5:21-4 ("a juvenile may be held in a police station in a place other than one designed for the detention of prisoners and apart from any adult charged with or convicted of [a] crime."); State ex rel.

Based on her own statistical analysis, the judge observed that the number of referral motions in Middlesex County had increased subsequent to the enactment of the amended waiver statute. Thus, the parties had no opportunity to address the issue at any point. Accordingly, she concluded from her statistical analysis that:

> the referral motions are being filed in cases in which the offenses charged are not especially heinous and the juveniles' prior histories are not especially extensive or serious to infer that they are not amenable to rehabilitation in the juvenile justice system. The State's actions and interpretation of the waiver statute contravene the Legislature's intent to minimize waivers and promote rehabilitation.

The judge described the State's concern about Mary's age to be impermissible double-counting. She was concerned about "the State's utter dismissal of the juvenile's statement, especially since the juvenile and victim were the only witnesses and there is little, if any, tangible evidence." The judge saw no reason for the State to have rejected E.R.M.'s explanation that Mary consented to have sex with him. She said:

> The Court is not requiring the State to provide a full analysis on the credibility of each witness, but in order

---

J.J., 427 N.J. Super. 541, 552 (App. Div. 2012) (mentioning the general policy towards "sight and sound separation" between juvenile delinquents and adults at mixed correctional facilities).

to assure that the State is not abusing its discretion when considering the evidence, the State should provide some explanation as to its credibility determinations when the nature and circumstances of the offense pivot on the conflicting statements of the victim and actor.

The judge went on to say that even if this twelve-year-old's statement was true,

the offense is not an especially heinous or cruel offense beyond the elements of the crimes that the waiver statute intends to target. The victim claimed that the [j]uvenile pushed her, grabbed her hands, removed her clothing and then penetrated her without her actual consent. As a result, she lost her virginity and bled, which the State considered as well. However, beyond losing her virginity, the State did not claim that the victim suffered any further injuries, either physical, mental or emotional. During [o]ral [a]rgument, the State questioned who decides the heinousness of a crime, and the answer is the Legislature and the [c]ourt, especially when it is clear that the State improperly based its waiver decision on the type of crime and not the nature and circumstances of the offense.

She did not consider it surprising that a sixteen-year-old boy would carry a condom and therefore disagreed with the State that the offense was calculated. The judge reiterated that although E.R.M.'s actions were serious, they did

not demonstrate that he used extreme violence or a weapon against the victim in furtherance of the offense or that he acted in a calculated, premediated [sic] or in an especially heinous manner seeing as the force used by the [j]uvenile was not excessive or beyond what is

A-0533-18T4

required by the law and the victim did not suffer any physical or emotional injuries as a result, other than the ramifications of losing her virginity, which the court does not find to be especially serious harm in this case.

Noting the New Jersey Supreme Court's discussions in recent case law of the different workings of the adolescent mind, she rejected the State's sixteen-page analysis of the statutory factors as

based on the crime itself and without an individualized assessment of the factors as they relate to the [j]uvenile. While the State's review of one factor alone may not be enough to rise to the level of abuse of discretion, cumulatively, the State's review of the factors rises to an abuse of discretion.

The State on appeal raises the following points of error:

POINT I
THE FAMILY COURT SUBSTITUTED ITS JUDGMENT FOR THAT OF THE PROSECUTOR WHEN FINDING THAT THE STATE ABUSED ITS DISCRETION BELOW.

POINT II
THE STATE'S DECISION TO SEEK WAIVER OF THE JUVENILE FROM FAMILY TO ADULT COURT WAS NOT AN ABUSE OF DISCRETION.

POINT III
THE COURT[] ERRED IN SUGGESTING THAT THE WAIVER STATU[T]E APPLIES ONLY TO "HEINOUS" CRIMES.

A-0533-18T4

In a juvenile delinquency case before the family court, the State may seek waiver of the juvenile to adult court, without consent, by filing a motion for referral and a written statement of reasons. N.J.S.A. 2A:4A-26.1(a). A juvenile cannot be waived into the Law Division unless the State can establish: 1) the juvenile was at least fifteen years of age at the time of the incident; and 2) probable cause exists that a certain enumerated crime was committed, including aggravated sexual assault and sexual assault. N.J.S.A. 2A:4A-26.1(c)(1), (2); see State in Interest of N.H., 226 N.J. 242, 251 (2016).

The court may still deny a referral motion, however, "if it is clearly convinced that the prosecutor abused [its] discretion" in considering the eleven factors enumerated in the statute. N.J.S.A. 2A:4A-26.1(c)(3); R. 5:22-2(c). The prosecutor will be found to have abused his or her discretion if the decision: 1) fails to consider all relevant factors; 2) considered irrelevant or inappropriate factors; or 3) "amounted to a clear error in judgment." State in the interest of V.A., 212 N.J. 1, 22 (2012) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).

Our standard of review on the appeal of referral cases "is whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constituted a 'clear error of judgment' in all of the circumstances." State in Interest of J.F., 446 N.J. Super.

39, 51-52 (App. Div. 2016) (quoting State v. R.G.D., 108 N.J. 1, 15 (1987)). Consideration should be given to the family court's expertise, common sense and experience in adjudicating such matters. Id. at 52 (citing R.G.D., 108 N.J. at 16 n.7).

Nonetheless, a juvenile judge's abuse of discretion review does not permit the family court to "substitute its judgment for that of the prosecutor." V.A., 212 N.J. at 8. It requires a limited, yet substantive, review to ensure the prosecutor made an individualized decision about the juvenile that was neither arbitrary nor abused the prosecutor's considerable discretion. Ibid. Likewise, cursory or conclusory statements "lacking in detail" will also not suffice. Id. at 8-9.

## I.

It is undisputed the State established that E.R.M. was at least fifteen years of age at the time of the offense and probable cause existed as to the charged offenses. Furthermore, the prosecutor's statement of reasons thoroughly and in an individualized fashion analyzed all of the relevant factors.

The State found that E.R.M. had forced Mary to have sex after she explicitly told him "no," and that E.R.M. "knew what he wanted to do and set out a plan to do it." E.R.M. was culpable even if Mary had consented, since she

was twelve years of age, and E.R.M. was sixteen. The State alleged that E.R.M.'s use of a condom meant he had "a high level of mature reasoning in committing an aggravated sexual assault[.]" E.R.M. experienced difficulty in school, both with academics and with "twelve suspensions" for disciplinary violations. Despite an apparent Individualized Educational Program (IEP) developed for E.R.M., no record of implementation existed. E.R.M. repeatedly got in trouble both in and outside of school.

Finally, in analyzing E.R.M.'s expert's psychological evaluation, the State acknowledged that E.R.M. qualified for "a conduct disorder, adolescent-onset type[,]" and that he had a history of depression, anger, and impulsive behavior problems, "largely due to [his] bipolar disorder and . . . further compounded by his immaturity." The State disagreed, however, that treatment for those problems was best reserved for the juvenile system, as "these services which are available in juvenile court are also available in the adult system." Mary's family supported waiver as well.

Thus, the State did not merely parrot the statutory factors or focus only on the offense. The charge is an aggravated sexual assault of a twelve-year-old, one of the enumerated offenses for which waiver can be sought. Admittedly,

E.R.M. and Mary had been romantically involved. That type of relationship, however, is very different from the alleged rape here.

## II.

Here, the judge made a substantive review of the factors enumerated in the statute after inappropriately turning to the legislative history. The statute's meaning was entirely unambiguous. When statutory language is clear, there is no need to delve "deeper than the act's literal terms to divine the Legislature's intent." State v. Gandhi, 201 N.J. 161, 180 (2010) (quoting State v. Thomas, 166 N.J. 560, 567 (2001)); N.J.S.A. 1:1-1. We only resort to extrinsic evidence to aid in the construction of a statute if it contains "some lingering measure of ambiguity[.]" Id. at 180-81. Here, the statute was not ambiguous, and did not require extrinsic support or an assessment of the legislative history.

Furthermore, the judge quoted statistics regarding waiver applications in that county, which were an inappropriate justification for her decision. Perhaps the judge could have taken judicial notice of these figures as records of the court, pursuant to N.J.R.E. 201(b)(4), and may have had the discretion to do so unilaterally, N.J.R.E. 201(c), but she did so sua sponte after making no mention of her intent during the prior hearings.

A-0533-18T4

When reviewing a prosecutor's waiver motion, the judge should rely solely on assessment of the individual juvenile and the unique circumstances of the offense. The point of a waiver hearing is not to provide an opportunity for a judge to school the State as to how to view the evidence, but merely to decide whether or not the State's conclusions about the charges were an abuse of discretion. It was not the judge's role to essentially try the matter or substitute her judgment for that of the prosecutor.

The judge did not ask whether all the relevant factors were addressed, whether any of them were addressed by the prosecutor in a fashion that was irrelevant or inappropriate, or if they were addressed by the prosecutor in a fashion that demonstrated a clear error in judgment. See V.A., 212 N.J. at 22. The judge, building on a theory of statutory interpretation inapplicable to the unambiguous language of this statute, and statistics regarding waiver applications in that county, discarded in its entirety each and every reason afforded by the State. In the process of doing so, errors of law occurred, such as the judge's application of the theory barring double-counting in sentencing decisions in her review of a waiver motion. The judge not only failed to apply the abuse of discretion standard, she mistakenly applied her judgment in doing

so, including minimization of the harm wrought on a twelve-year-old child by E.R.M. assuming her claims are true.

It may be, as the judge commented, that waiver to adult court "is the single most serious act that the juvenile court can perform." N.H., 226 N.J. at 252 (citing R.G.D., 108 N.J. at 4-5). Nonetheless, the momentousness of the decision does not mean the court may usurp the prosecutorial function. It was the family court's role to determine if the prosecutor's decision was an abuse of discretion, not whether, in her opinion, after assessing legislative history, independently assessing the credibility of E.R.M. and Mary, and assessing how much or little harm was inflicted on the victim, the offense warranted being addressed in adult court.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0533-18T4